UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ROBIN HALL,<br><br>              Plaintiff,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU,<br>CHRISTOPHER KOANUI, LEONARD<br>LETOTO, DEBRA MAIOHO-POHINA,<br>DOE OFFICER 1,  DOE OFFICER 2,<br>JOHN LEO CASTILLO,<br><br>              Defendants. | CIV. NO. 21-00248 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT CITY AND COUNTY OF HONOLULU'S AND
DEFENDANT DEBRA MAIOHO-POHINA'S MOTIONS TO DISMISS**

Before the Court are: Defendant City and County of Honolulu's ("the City") Motion to Dismiss Second Amended Complaint Filed October 28, 2021 ("City Motion"), filed on November 12, 2021; and Defendant Debra Maioho-Pohina's ("Maioho-Pohina") Motion to Dismiss Second Amended Complaint Filed October 28, 2021 ("Maioho-Pohina Motion"), also filed on November 12, 2021. [Dkt. nos. 43, 44.] Plaintiff Robin Hall ("Hall") filed her memorandum in opposition to the City Motion and her memorandum in opposition to the Maioho-Pohina Motion on January 28, 2022. [Dkt. nos. 53, 54.] On February 1, 2022, Defendant Leonard Letoto ("Letoto") filed a statement of no position as to each motion. [Dkt. nos. 55, 56.] On February 4,

2022, the City and Maioho-Pohina filed their respective replies. [Dkt. nos. 58, 59.]  These matters came on for hearing on February 18, 2022.  The City Motion and the Maioho-Pohina Motion are hereby granted in part and denied in part for the reasons set forth below.

<u>**BACKGROUND**</u>

The instant case arises from an incident that occurred on June 10, 2019.  <u>See</u> Second Amended Complaint for Declaratory and Injunctive Relief and Damages ("Second Amended Complaint"), filed 10/28/21 (dkt. no. 36), at ¶ 1.  Hall arranged for Letoto, one of the owners of Exceptional Obedience, LLC ("EOL"), a business that she had been working for, to meet her at her home to finalize matters related to her resignation.  According to Hall, Letoto attempted to force his way into her home, and she called 911 to report a crime in progress.  [<u>Id.</u> at ¶¶ 27-37.] Defendants Christopher Koanui ("Koanui") and John Leo Castillo ("Castillo"), police officers with the Honolulu Police Department ("HPD"), later arrived at Hall's home.  [<u>Id.</u> at ¶¶ 15, 18, 49.]

Hall alleges Koanui is a co-owner/member of EOL, and a close friend of Letoto.  [<u>Id.</u> at ¶¶ 15, 28.]  Hall gave Koanui her account of what happened, and Hall told him she wanted to file a police report against Letoto, but Koanui refused to make a report.  Instead, Koanui made a false report against Hall,

alleging she stole a phone that had been issued to her for her work with EOL, and arrested her. [Id. at ¶¶ 56-59, 63.] Hall alleges that, because of his relationship with Letoto, Koanui had a conflict of interest in the situation, and Koanui ultimately violated Hall's constitutional rights and retaliated against her because she attempted to exercise her rights. [Id. at ¶¶ 58, 62-66.]

After being threatened with arrest, Hall called 911 again, and Maioho-Pohina arrived at Hall's home. Hall alleges Maioho-Pohina did nothing to stop Koanui's improper conduct, [id. at ¶¶ 67-68,] even though, at all relevant times, Maioho-Pohina was acting as a supervising officer, [id. at ¶ 197]. Later that night, Hall called 911 again and asked if Maioho-Pohina would speak to Hall's son, who was traumatized by the incident. Maioho-Pohina offered to return to Hall's home. Once there, Maioho-Pohina informed Hall of her rights, and Maioho-Pohina said Hall was a suspect in a criminal investigation. [Id. at ¶¶ 69-71.] However, "Maioho-Pohina acknowledged to Plaintiff that there was something very wrong with the situation around [Koanui's and Castillo's] response to the incident." [Id. at ¶ 72.] Maioho-Pohina offered to help Hall, but the only thing that Maioho-Pohina did was call Hall the next day and tell Hall that Koanui was on duty when Hall made her original 911 call. [Id.]

In the days that followed, Hall learned that Koanui was a co-owner of EOL, and she attempted to pursue an internal HPD complaint. However, HPD staff would not allow her to obtain a copy of the police report about the incident, purportedly because she was a suspect in the case that arose from the incident. [Id. at ¶¶ 73-78.] Finally, "[o]n May 19, 2021, Plaintiff sent a letter to two of Defendant City's official policy-makers—i.e., HPD's then-Chief Susan Ballard and HPD's now-Interim Chief Rade Vanic—describing the myriad ways in which HPD, through Defendant Officer Koanui, had violated her constitutional rights" ("5/19/21 Hall Letter"). [Id. at ¶ 226.] Hall alleges Interim Chief Vanic's June 4, 2021 letter responding to her letter ("6/4/21 Vanic Response") ratified Koanui's unconstitutional conduct. [Id. at ¶¶ 228-30.] Hall alleges the City violated, and showed deliberate indifference to, her constitutional rights by: 1) having "a facially deficient conflict-of-interest policy that allows the very kind of abuse that Plaintiff suffered"; 2) failing to train and supervise HPD officers regarding the type of constitutional violations that occurred here; and 3) endorsing, approving, and ratifying Koanui's unconstitutional conduct. [Id. at ¶ 79.]

The Second Amended Complaint alleges thirteen claims. Relevant to the instant motions, Hall alleges:

-a 42 U.S.C. § 1983 claim against Koanui, Maioho-Pohina, Castillo, Doe Officer 1, and Doe Officer 2 for malicious abuse of process, in violation of her Fourteenth Amendment rights ("Claim 4");

-a § 1983 claim against Koanui, Maioho-Pohina, Castillo, Doe Officer 1, and Doe Officer 2 for violation of her Fourteenth Amendment equal protection rights ("Claim 5");

-a § 1983 claim against Maioho-Pohina and Doe Officer 1, based on supervisory liability ("Claim 7");

-a § 1983 claim, pursuant to <u>Monell v. Department of Social Services of N.Y.C.</u>, 436 U.S. 658 (1978), against the City, based on its facially deficient policies ("Claim 8");

-a <u>Monell</u> claim against the City, based on the failure to train and supervise ("Claim 9"); and

-a <u>Monell</u> claim against the City, based on its ratification of unconstitutional conduct ("Claim 10").

The City Motion seeks the dismissal of the three <u>Monell</u> claims (Claims 8 through 10), with prejudice, on the ground that the claims are insufficiently pled.  The Maioho-Pohina Motion seeks the dismissal, with prejudice, of all of Hall's claims against Maioho-Pohina, on the grounds that they are insufficiently pled and because of qualified immunity.

## DISCUSSION

I.   **Incorporation by Reference**

The City Motion includes a copy of the 6/4/21 Vanic Response, [City Motion, Decl. of Counsel, Exh. A,] and the City argues this Court can consider the response's contents without converting the motions to dismiss into motions for summary judgment.

> "Ordinarily, a court may look only at the
> face of the complaint to decide a motion to
> dismiss." <u>Van Buskirk v. Cable News Network,
> Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002).
> However, "[u]nder the 'incorporation by
> reference' rule of this Circuit, a court may look
> beyond the pleadings without converting the
> Rule 12(b)(6) motion into one for summary
> judgment." <u>Id.</u>  Specifically, a court may
> consider documents "incorporated into the
> complaint by reference." <u>Tellabs[, Inc. v. Makar
> Issues & Rts., Ltd.]</u>, 551 U.S. [308,] 322, 127 S.
> Ct. 2499 [(2007)].  Such documents are "assume[d]
> . . . [to be] true for purposes of a motion to
> dismiss." <u>Khoja [v. Orexigen Therapeutics,
> Inc.]</u>, 899 F.3d [988,] 1003 [(9th Cir. 2018)]
> (quoting <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th
> Cir. 2006)).  Thus, where the complaint makes
> "conclusory allegations that are contradicted by
> documents referred to [or incorporated] in the
> complaint," a court may decline to accept such
> conclusory allegations as true. <u>Tritz v. U.S.
> Postal Serv.</u>, 721 F.3d 1133, 1135 n.1 (9th Cir.
> 2013).  On the other hand, "it is improper to
> assume the truth of an incorporated document if
> such assumptions only serve to dispute **facts**
> stated in a well-pleaded complaint." <u>Khoja</u>, 899
> F.3d at 1003 (emphasis added).

<u>J.K.J. v. City of San Diego</u>, 17 F.4th 1247, 1254 (9th Cir. 2021)

(emphasis and some alterations in <u>J.K.J.</u>).  A document is

incorporated by reference in a complaint "if the plaintiff

refers extensively to the document or the document forms the

basis of the plaintiff's claim." <u>Khoja</u>, 899 F.3d at 1002

(quotation marks and citation omitted).

    The 6/4/21 Vanic Response is the basis for Hall's

ratification claim.  <u>See</u> Second Amended Complaint at ¶¶ 228-30.

This Court therefore concludes that the 6/4/21 Vanic Response is

incorporated by reference into the Second Amended Complaint, and the response can be considered without converting the motions to dismiss into motions for summary judgment.

The City also argues that, if this Court finds it is necessary to consider the policies that HPD had in place during the relevant period, HPD Policy Number 2.21 and HPD Policy Number 8.06 are incorporated by reference in the Second Amended Complaint.  Policy Number 2.21 is quoted in the Second Amended Complaint, [Second Amended Complaint at ¶ 60,] and Hall relies upon both policies to support her position that HPD had inadequate policies to address officers' conflicts of interest. [Id. at ¶¶ 82-84.]  This Court therefore concludes that HPD Policy Number 2.21 and HPD Policy Number 8.06 are incorporated by reference into the Second Amended Complaint, and those policies can be considered without converting the motions to dismiss into motions for summary judgment.

## II.  Liability Under § 1983

42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

7

## A.   Claims Against the City

Section 1983 liability cannot be based on respondeat superior.  Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).

> A municipality may be held liable as a "person" under 42 U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights.  Monell, 436 U.S. at 694, 98 S. Ct. 2018.  To state such a claim, a plaintiff must allege either that (1) "a particular municipal action **itself** violates federal law, or directs an employee to do so"; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights.  Board of Commissioners of Bryan County v. Brown, 520 U.S. 397, 404, 407–08, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012).  When, as here, a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights.  Tsao, 698 F.3d at 1143.

Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1141 (9th Cir. 2020) (emphasis in Park).

### 1.   Claim 8 (Facially Deficient Policies)

Hall acknowledges that HPD has a policy addressing conflicts of interest, but she contends it is "grossly inadequate and facially deficient."  [Second Amended Complaint at ¶ 205.]  The HPD Code of Ethics states, in relevant part: "I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my

decisions.  With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will . . . ." Honolulu Police Department Policy - Organization, Management, and Administration, Policy Number 2.21 (Dec. 1, 2016), https://www.honolulupd.org/wp-content/uploads/2020/01/StandardsofConduct-03-21-2017-20-10-41.pdf, at art. V.  Policy Number 2.21, article V prohibits the alleged violation in this case - Koanui allegedly allowed his personal feelings and his friendship with Letoto to influence his decisions as a police officer during the incident at Hall's home.

Hall also relies upon Policy Number 8.06, which states, in relevant part: "An on-duty officer shall prepare a numbered report each time he or she receives a complaint or observes a violation of law, motor vehicle collision, or unusual occurrence."  Honolulu Police Department Policy - Auxiliary and Technical Services, Policy Number 8.06 (Nov. 1, 2016), https://www.honolulupd.org/wp-content/uploads/2020/01/PoliceReports-12-15-2016-21-57-49.pdf, at § II.A.  This provision also prohibits the alleged violation in this case - Koanui, an on-duty police officer, refused to prepare a report when he received a complaint from Hall.

Neither Policy Number 2.21 nor Policy Number 8.06 directed Koanui to violate Hall's rights.  Thus, Claim 8 is based upon the City's alleged inaction and failure to implement adequate polices.

> When . . . a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights. Tsao, 698 F.3d at 1143. . . .
>
> Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410, 117 S. Ct. 1382.  Deliberate indifference exists when the need "for more or different" action "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 & n.10, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).  A plaintiff can meet this standard in one of two ways.  In some circumstances, the policy may be so facially deficient that any reasonable policymaker would recognize the need to take action.  Brown, 520 U.S. at 409, 117 S. Ct. 1382.  When that is the case, a plaintiff need point only to the policy itself to establish that the municipality's policymakers were on notice that the plaintiff's federally protected rights would likely be violated if they failed to act.  See id.  Alternatively, if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice.  Connick v. Thompson, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1253 (9th Cir. 2010), *overruled on other grounds by* Castro [v. Cnty. of Los

10

Angeles], 833 F.3d [1060,] 1070 [(9th Cir. 2016)].

Park, 952 F.3d at 1141–42 (alteration in Park) (footnote omitted).  The factual allegations in the Second Amended Complaint do not describe a policy that is "so facially deficient that any reasonable policymaker would recognize the need to take action."  See id. at 1141.

Nor do the factual allegations describe "a pattern of prior, **similar** violations of federally protected rights, of which the relevant policymakers had actual or constructive notice."  See id. at 1142 (emphasis added).  Claim 8 therefore fails to plead a plausible Monell claim based on allegedly deficient policies and must be dismissed.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)); Fed. R. Civ. P. 12(b)(6) (stating the defense of "failure to state a claim upon which relief can be granted" may be asserted by motion).

## 2.   **Claim 9 (Failure to Train and Supervise)**

Claim 9 also alleges HPD has facially inadequate training and supervision regarding officers' conflicts of interest.  [Second Amended Complaint at ¶ 214.]  In addition,

11

Hall alleges the City had "actual and/or constructive knowledge of instances demonstrating the deficiencies in [HPD's] training and supervision," and therefore the City knew or should have known that HPD's training and supervision was inadequate in this area.  [Id. at ¶ 220.]

> The United States Supreme Court has stated:
>
>> A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell").  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  Canton, 489 U.S., at 388.  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  Id., at 389.

Connick, 563 U.S. at 61 (alterations in Connick).  Similarly, a plausible failure-to-supervise claim must allege "that any violation of his constitutional rights was caused by a county 'policy' or 'governmental "custom."'"  See, e.g., Thompson v. Rahr, 714 Fed. App'x 805, 807 (9th Cir. 2018) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)) (affirming the district court's dismissal of the plaintiff's failure-to-supervise claims).

Reading Claim 9 in the context of the Second Amended Complaint as a whole and in light of the relevant case law, this Court concludes that Claim 9 is related to Claim 8, and that Claim 9 fails to state a plausible claim for relief for the same reasons set forth as to Claim 8.  Claim 9 must therefore be dismissed.

### 3.   **Claim 10 (Ratification)**

Claim 10 alleges the 6/4/21 Vanic Response constitutes ratification of Koanui's unconstitutional conduct and subjects the City to liability.  [Second Amended Complaint at ¶¶ 226-30.]

Another way that municipal liability can be established is if "an official with final policymaking authority 'ratifies a subordinate's decision and the basis for it[.]'" Jessen v. Cnty. of Fresno, 808 F. App'x 432, 435 (9th Cir. 2020) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).  "Whether a particular official has final policy-making authority is a question of state law."  Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292 (1986) (plurality opinion)).  This Court has stated:

> "As to matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority."  Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). Under Haw. Rev. Stat. § 52D-3, "[t]he chief of

13

> police shall have the powers and duties as
> prescribed by law, the respective county charter,
> and as provided by this chapter."  Section 6-1601
> of the Revised Charter of the City and County of
> Honolulu 1973 (Amended 2017 Edition) ("City
> Charter") states "[t]he chief of police shall be
> the administrative head of the police
> department."  City Charter § 6-1604 governs the
> powers, duties, and functions of the chief of
> police.  "The chief of police shall . . .
> detect[] and arrest . . . offenders" and
> "[t]rain, equip, maintain and supervise the force
> of police officers."  City Charter § 6-1604(a),
> (b).  Although the "chief [of police] shall serve
> at the pleasure of the police commission," City
> Charter § 6-1603(1), "neither the [police]
> commission nor its members shall interfere in any
> way with the administrative affairs of the
> department," City Charter § 6-1606(h).

Puana v. Kealoha, CIV. NO. 16-00659 LEK-WRP, 2022 WL 604726, at

*14 (D. Hawai`i Feb. 28, 2022) (alterations in Puana).  This

Court therefore finds, that for purposes of the City Motion, the

Second Amended Complaint plausibly alleges that Interim Chief

Vanic had final, policy-making authority as to the HPD policies

relevant to this case.

    The 6/24/21 Vanic Response states: the public is

encouraged to report alleged misconduct by HPD officers to HPD

management; complaints alleging officer misconduct are taken

very seriously; and HPD has investigation and discipline

procedures in place.  However, Interim Chief Vanic explained

that, pursuant to the collective bargaining agreement between

HPD and the police officers' union, an administrative

investigation of a complaint against an officer must be

14

conducted within one year of the alleged incident.  [City
Motion, Decl. of Counsel, Exh. A at 1.]  Interim Chief Vanic
stated that, because Hall submitted a formal complaint to HPD
more than a year after the incident, "by operation of the
collective bargaining agreement, HPD cannot conduct an
administrative investigation against Officer Christopher
Koanui."  [Id.]  He also opined that Koanui's alleged conflict
of interest "had no role in the initiation of the criminal case
against [Hall]" because Koanui was not the officer who initiated
the criminal case against Hall; another officer did so.  [Id.]
This Court therefore concludes that, standing alone, the 6/4/21
Vanic Response does not constitute ratification of Koanui's
allegedly unconstitutional conduct.  Claim 10 fails to state a
plausible Monell claim based on ratification and must be
dismissed.

> ### B.   Claims Against Maioho-Pohina

For purposes of the Maioho-Pohina Motion, this Court
accepts Hall's allegation that Maioho-Pohina was acting as a
supervisor at all relevant times.  See Second Amended Complaint
at ¶ 197; see also Iqbal, 556 U.S. at 678 ("for the purposes of
a motion to dismiss we must take all of the factual allegations
in the complaint as true").  The Ninth Circuit has stated:

> We have long permitted plaintiffs to hold
> supervisors individually liable in § 1983 suits
> when culpable action, or inaction, is directly

attributed to them.  We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred.  In Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991), we explained that to be held liable, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  Id. at 645.  Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Id. at 646 (internal citations, quotation marks, and alterations omitted).

          . . . .

     We therefore conclude that a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.

          . . . .

     A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right."  Redman [v. Cnty. of San Diego], 942 F.2d [1435,] 1447 [(9th Cir. 1991)] (internal quotation marks omitted).

16

> "The requisite causal connection can be
> established . . . by setting in motion a series
> of acts by others," id. (alteration in original;
> internal quotation marks omitted), or by
> "knowingly refus[ing] to terminate a series of
> acts by others, which [the supervisor] knew or
> reasonably should have known would cause others
> to inflict a constitutional injury," Dubner v.
> City & Cnty. of San Francisco, 266 F.3d 959, 968
> (9th Cir. 2001).  "A supervisor can be liable in
> his individual capacity for his own culpable
> action or inaction in the training, supervision,
> or control of his subordinates; for his
> acquiescence in the constitutional deprivation;
> or for conduct that showed a reckless or callous
> indifference to the rights of others."  Watkins
> v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir.
> 1998) (internal alteration and quotation marks
> omitted).

Starr v. Baca, 652 F.3d 1202, 1205–08 (9th Cir. 2011) (some

alterations in Starr).

### 1.   Claim 4 - Abuse of Process

Maioho-Pohina argues Hall's abuse of process claim is

not cognizable under § 1983.  This district court has stated:

> The Ninth Circuit has not determined whether
> an abuse of process claim is cognizable under
> Section 1983.  See West [v. City of Mesa], 708 F.
> App'x [288,] 292 [(9th Cir. 2017)] (stating,
> "[e]ven assuming an abuse of process claim is
> cognizable under § 1983 in our circuit," West
> failed to plead sufficient facts to state a
> claim).  Most federal courts to consider the
> issue have concluded that there is no
> constitutional violation for abuse of process
> under Section 1983 without conscience-shocking,
> egregious wrongdoing.  See Martin A. Schwartz,
> Section 1983 Claims and Defenses, § 3.18
> Malicious Prosecution; Abuse of Civil Process
> (4th ed. 2018 Supp.) (collecting cases); Brown v.
> Lever, 2018 WL 1903120, at *6 (D. Nev. Apr. 20,
> 2018) (dismissing abuse of process claim).  An

17

> abuse of process claim is essentially a malicious
> prosecution clam, which requires a showing that
> the defendant prosecuted the plaintiff with
> malice, without probable cause, and for the
> purpose of denying equal protection or some other
> specific constitutional right, and that the
> criminal case terminated in favor of the accused.
> Lacey v. Maricopa Cty., 693 F.3d 896, 919 (9th
> Cir. 2012) (en banc).

Char v. Simeona, CIV. NO. 18-00303 DKW-KJM, 2018 WL 5815519, at

*4 (D. Hawai`i Nov. 6, 2018).

Hall points out that the Ninth Circuit in West

affirmed the dismissal of the plaintiff's § 1983 abuse of

process claim for failure to state a claim - not because such a

claim is not recognized in the Ninth Circuit - but because the

plaintiff failed to allege sufficient facts regarding the color

of law requirement.  See West, 708 F. App'x at 292; see also

Navarro v. City of S. Gate, 81 F. App'x 192, 196 (9th Cir. 2003)

(reversing the district court's grant of summary judgment to the

defendants on, inter alia, the plaintiff's abuse of process

claim).  Hall argues the Ninth Circuit looks to the

corresponding state law claim to determine the elements of

common law torts, like abuse of process, in the § 1983 context,

and she urges this Court to use the elements of a malicious

abuse of process claim under Hawai`i law as the elements of the

§ 1983 abuse of process claim.  [Mem. in Opp. to Maioho-Pohina

Motion at 10 (some citations omitted) (citing Awabdy v. City of

Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); Young v. Allstate

Ins. Co., 119 Haw. 403, 412, 198 P.3d 666, 675 (Haw. 2008)).[1]]
Young defined the elements of an abuse of process claim as:
"(1) an ulterior purpose and (2) a wilful act in the use of the
process which is not proper in the regular conduct of the
proceeding."  119 Hawai`i at 412, 198 P.3d at 67.  Thus, under
Hawai`i law, egregious conduct that shocks the conscience is not
required.

At this stage of the case, the Court need not decide
whether the Hawai`i law elements of an abuse of process claim
also constitute a § 1983 abuse of process claim or whether
egregious conduct that shocks the conscience is required
because, under either standard, Hall fails to plead a plausible
abuse of process claim.  Hall alleges that, when Maioho-Pohina
arrived at Hall's home, Koanui was present and Hall told Maioho-
Pohina that Koanui had committed misconduct, but Maioho-Pohina
did nothing to stop the misconduct.  [Second Amended Complaint
at ¶¶ 67-68, 198.]  Hall describes other contacts with Maioho-
Pohina in the hours after the incident, as well as a telephone
call the next day.  According to Hall, although Maioho-Pohina
offered to help Hall, the only additional information Maioho-

---

[1] In Awadby, the Ninth Circuit stated it would "look to
California law . . . because we have incorporated the relevant
elements of the common law tort of malicious prosecution into
our analysis under § 1983."  368 F.3d at 1066 (some citations
omitted) (citing Usher v. City of Los Angeles, 828 F.2d 556, 562
(9th Cir. 1987)).

Pohina provided was a confirmation that Koanui was on duty when
Hall called 911.  [Id. at ¶¶ 70-72.]  Hall, however, does not
allege that Maioho-Pohina was aware of Koanui's alleged conflict
of interest at the time of Maioho-Pohina's contacts with Hall,
and thus it appears that Maioho-Pohina was not aware of Koanui's
alleged abuse of power.  See id. at ¶ 200 (alleging Koanui's
"conduct—in a situation presenting unambiguous conflicts of
interest—violated Plaintiff's constitutional rights and
constituted an improper abuse of power").  The Second Amended
Complaint does not plead sufficient factual allegations to state
a plausible § 1983 abuse of process claim, either as the claim
is described in Char or as the similar tort claim is defined
under Hawai`i law.  Claim 4 must therefore be dismissed.

## 2.    Claim 5 - Equal Protection

The Equal Protection Clause of the
Fourteenth Amendment requires that persons who
are similarly situated be treated alike.  See
City of Cleburne v. Cleburne Living Ctr., 473
U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d
878, 891 (9th Cir. 2008).  An equal protection
claim may be established by showing that
defendants intentionally discriminated against an
individual based on his or her membership in a
protected class.  See Comm. Concerning Cmty.
Improvement v. City of Modesto, 583 F.3d 690,
702–03 (9th Cir. 2009); Serrano v. Francis, 345
F.3d 1071, 1082 (9th Cir. 2003); Lee [v. City of
Los Angeles], 250 F.3d [668,] 686 [(9th Cir.
2001)]. . . .

An equal protection claim can also be stated
by a showing that defendants intentionally
treated similarly situated individuals

> differently without a rational relationship to a
> legitimate state purpose.  See Engquist v. Or.
> Dep't of Agric., 553 U.S. 591, 601-02 (2008);
> Village of Willowbrook v. Olech, 528 U.S. 562,
> 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546
> F.3d 580, 592 (9th Cir. 2008).

Makanani v. Wagutsuma, CIV. NO. 19-00546 JAO-RT, 2019 WL

7373030, at *4 (D. Hawai`i Dec. 31, 2019).

Hall alleges her rights to equal protection were

violated when: the officers refused to file a report against

Letoto, even though Hall wanted to pursue a complaint; the

officers filed a false misleading report against Hall, with

Letoto as the purported victim; and the officers interrogated

and arrested Hall without probable cause, while Letoto was not

arrested.  [Second Amended Complaint at ¶ 185.]  Hall relies

upon her membership in a protected class - her attempt to

exercise her First Amendment rights by pursuing a police

complaint against Letoto.  [Id. at ¶ 189.]  When Maioho-Pohina

arrived, she was acting in a supervisory capacity,[2] [id. at

¶ 197,] and Hall "explained the multiple ways in which Officer

Koanui had committed misconduct against [Hall]" to Maioho-

---

[2] At the hearing, Hall's counsel argued Claim 5 also pleads
a plausible § 1983 equal protection claim against Maioho-Pohina,
based on Maioho-Pohina's **direct** liability, without regard to her
role as a supervisor.  This Court, however, declines to address
that argument because the Second Amended Complaint does not
plead a factual basis for that theory of liability, and
therefore this Court does not construe Claim 5 as asserting a
direct liability claim against Maioho-Pohina.

Pohina,[3] [id. at ¶ 198].  However, Maioho-Pohina failed to act to stop the violation of Hall's constitutional rights.  [Id. at ¶¶ 200-03.]  In addition, Hall asserts a class-of-one theory, based on the fact that Letoto, a similarly situated person who received more favorable treatment than Hall received, was a friend and business partner of Koanui, and Hall was not.  [Id. at ¶¶ 187-88.]  Hall's factual allegations are sufficient to state a plausible § 1983 equal protection claim.

Maioho-Pohina also urges this Court to dismiss Hall's equal protection claim based on qualified immunity.  The Ninth Circuit has stated:

> Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  When an officer claims qualified immunity, we ask "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." Jessop v. City of Fresno, 936 F.3d 937, 940 (9th Cir. 2019) (quoting Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014)).  Courts have discretion to decide which of the two prongs

---

[3] Koanui's conflict of interest because of his pre-existing relationship with Letoto was not among the alleged misconduct that Hall reported to Maioho-Pohina because Hall was not aware of the relationship at that time.  See Second Amended Complaint at ¶ 73 ("In the following days, Plaintiff was shocked to learn that Defendant Officer Koanui was, in fact, the co-owner of Exceptional Obedience, along with Defendant Letoto.").

> "should be addressed first in light of the
> circumstances in the particular case at hand."
> Pearson v. Callahan, 555 U.S. 223, 236, 129 S.
> Ct. 808, 172 L. Ed. 2d 565 (2009).  "Addressing
> the second prong before the first is especially
> appropriate where 'a court will rather quickly
> and easily decide that there was no violation of
> clearly established law.'"  Jessop, 936 F.3d at
> 940 (quoting Pearson, 555 U.S. at 239, 129 S. Ct.
> 808).

Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1198 (9th

Cir. 2021).

> Law enforcement officials are entitled to
> qualified immunity even where their conduct
> violated a constitutional right unless that right
> was clearly established at the time of the
> violation.  Saucier v. Katz, 533 U.S. 194, 202,
> 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The
> dispositive inquiry is whether "it would be clear
> to a reasonable officer that his conduct was
> unlawful in the situation he confronted."  Id.
> Thus, our "task is to determine whether the
> preexisting law provided the defendants with
> 'fair warning' that their conduct was unlawful."
> Flores [v. Morgan Hill Unified Sch. Dist.], 324
> F.3d [1130,] 1136-37 [(9th Cir. 2003)] (quoting
> Hope v. Pelzer, 536 U.S. 730, 740, 122 S. Ct.
> 2508, 153 L. Ed. 2d 666 (2002)).

Elliot-Park v. Manglona, 592 F.3d 1003, 1008 (9th Cir. 2010).

Based on the analysis regarding whether Hall pleads a

plausible § 1983 equal protection claim, there are sufficient

allegations to satisfy the first factor of the qualified

immunity analysis, for purposes of a motion to dismiss.  As to

the second factor, the right to non-discriminatory treatment by

law enforcement when reporting a crime is well established.  See

id. ("The right to non-discriminatory administration of

protective services is clearly established.").  The Maioho-Pohina Motion is denied, to the extent that it seeks dismissal of Claim 5 on the basis of qualified immunity.  The denial is without prejudice to Maioho-Pohina revisiting the issue at summary judgment or at trial, if warranted by the evidence at that time.

### 3.    Claim 7 - Supervisor Liability

Claim 7 merely pleads the theory of liability that supports Claims 4 and 5.  As the three claims are currently pled, Claim 7 does not plead a claim for relief which is separate and distinct from Claims 4 and 5.  The Maioho-Pohina Motion is therefore granted, insofar as Claim 7 is dismissed.

## III. Summary and Leave to Amend

The Maioho-Pohina Motion has been denied as to Hall's claim against Maioho-Pohina in Claim 5, but the Maioho-Pohina Motion has been granted, insofar as Hall's claims against Maioho-Pohina in Claims 4 and 7 have been dismissed.  The City Motion has been granted, insofar as all of Hall's claims against the City - Claims 8, 9, and 10 - have been dismissed.  The City and Maioho-Pohina argue the dismissal of these claims should be with prejudice because Hall has already had two opportunities to amend her original complaint in this case.

**A.**   <u>**Punitive Damages**</u>

This Court turns first to Hall's request for an award
of punitive damages against the City.  <u>See</u> Second Amended
Complaint at pg. 60, ¶ G.  "It is well established that a
municipality is immune from punitive damages pursuant to 42
U.S.C. § 19[8]3 . . . ."  <u>Hyer v. City & Cnty. of Honolulu</u>, CIV.
NO. 19-00586 HG-RT, 2020 WL 7038953, at *16 (D. Hawai`i Nov. 30,
2020) (citing <u>Newport v. Fact Concerts</u>, 453 U.S. 247, 271
(1981)).  Because it is not possible for Hall to obtain an award
of punitive damages in her <u>Monell</u> claims against the City, Hall
will not be permitted to re-assert her request for an award of
punitive damages against the City.

**B.**   <u>**All Other Portions of the Dismissed Claims**</u>

"Dismissal with prejudice and without leave to amend
is not appropriate unless it is clear on de novo review that the
complaint could not be saved by amendment."  <u>See</u> <u>Hoang v. Bank
of Am., N.A.</u>, 910 F.3d 1096, 1102 (9th Cir. 2018) (quotation
marks and citation omitted)).  Often, the failure to cure
defects in prior opportunities to amend "is a strong indication
that the plaintiffs have no additional facts to plead."  <u>See</u>
<u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1007 (9th
Cir. 2009) (citation and internal quotation marks omitted).  In
light of the procedural history of this case, and having
considered the representations made by Hall during the hearing

about the theories behind her claims, this Court finds that it may be possible to save the dismissed claims by amendment.  The dismissal of Claims 8, 9, and 10, and Hall's claims against Maioho-Pohina in Claims 4 and 7 must therefore be without prejudice.

Although it is theoretically possible for Hall to cure the defects in her claims by amendment, the fact that this will be the fourth version of Hall's pleading suggests that she may be unable to cure the defects.  Therefore, Hall is not granted leave to file a third amended complaint.  Hall must file a motion for leave to file a third amended complaint, and such motion will be considered by the magistrate judge.

**CONCLUSION**

For the foregoing reasons, the City's Motion to Dismiss Second Amended Complaint Filed October 28, 2021 and Maioho-Pohina's Motion to Dismiss Second Amended Complaint Filed October 28, 2021, both filed November 12, 2021, are HEREBY GRANTED IN PART AND DENIED IN PART.  The City Motion is GRANTED, insofar as all of Hall's claims against the City are DISMISSED. The City Motion is DENIED, insofar as the dismissal is WITHOUT PREJUDICE.  The City Motion is also GRANTED, insofar as Hall's proposed third amended complaint may not include a request for punitive damages against the City.

The Maioho-Pohina Motion is GRANTED, insofar as Hall's claims against Maioho-Pohina in Claim 4 and Claim 7 are DISMISSED.  The Maioho-Pohina Motion is DENIED as to Hall's claim against Maioho-Pohina in Claim 5, and the motion is DENIED, insofar as the dismissal of Hall's claims against Maioho-Pohina in Claim 4 and Claim 7 is WITHOUT PREJUDICE.

Hall is GRANTED permission to file a motion seeking leave to file a third amended complaint.  Hall's motion for leave must be filed by **May 26, 2022,** and it will be considered by the magistrate judge.  If Hall does not file a motion for leave, the claims that were dismissed without prejudice in this Order will be dismissed with prejudice, and the case will proceed as to the remaining claims in Hall's Second Amended Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 26, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ROBIN HALL VS. CITY AND COUNTY OF HONOLULU, ET AL; CV 21-00248 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S AND DEFENDANT DEBRA MAIONO-POHINA'S MOTIONS TO DISMISS**