```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3
     ROBIN HALL,                    )  CIVIL NO. 21-00248-LEK-KJM
 4                                  )
              Plaintiff,            )  Honolulu, Hawaii
 5                                  )
         vs.                        )  February 18, 2022
 6                                  )
     CITY AND COUNTY OF             )
 7   HONOLULU; CHRISTOPHER          )  MOTIONS TO DISMISS
     KOANUI; LEONARD LETOTO;        )
 8   DEBRA MAIOHO-POHINA;           )
     DOE OFFICER 1; DOE OFFICER     )
 9   2; and DOE OFFICER 3,          )
                                    )
10              Defendants.         )
     _____)
11

12                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LESLIE E. KOBAYASHI,
13              UNITED STATES DISTRICT COURT JUDGE

14   APPEARANCES:

15
     For the Plaintiff:           JONGWOOK PHILIP KIM, ESQ.
16                                ACLU of Hawaii
                                  P.O. Box 3410
17                                Honolulu, HI 96801

18   For the Defendant City and   Stephen Deutsch Atwell
     County of Honolulu:          Department of Corporation Counsel
19                                City & County of Honolulu
                                  530 S. King Street, Ste 110
20                                Honolulu, HI 96813

21

22   For the Defendant Leonard    Jonathan L. Ortiz
     Letoto:                      Ortiz & Associates, A Law
23                                Corporation
                                  Suite 2121 Davies Pacific Center
24                                841 Bishop Street
                                  Honolulu, HI 96813
25
```

```
 1   For the Defendant Leonard      Leighton M. Hara
     Letoto:                        Ota & Hara LLLC
 2                                  Pacific Guardian Center,
                                    Mauka Tower
 3                                  737 Bishop Street, Suite 2860
                                    Honolulu, HI 96813
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   Official Court Reporter:      Gloria T. Bediamol, RPR RMR CRR FCRR
                                   United States District Court
22                                 300 Ala Moana Boulevard
                                   Honolulu, Hawaii 96850
23

24
        Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
|          | 1  | February 18, 2022                                    10:33 a.m.  |
| 07:18AM  | 2  | THE CLERK:  Civil Number 21-00248-LEK-KJM, Robin Hall            |
| 10:33AM  | 3  | versus City and County of Honolulu, et al.                      |
| 10:33AM  | 4  | This matter is set for two motions to dismiss.                  |
| 10:33AM  | 5  | Counsel, please make your appearances for the record.           |
| 10:33AM  | 6  | MR. KIM:  Jong "Wookie" Kim for plaintiff, Robin Hall.          |
| 10:33AM  | 7  | THE COURT:  Good morning.                                       |
| 10:33AM  | 8  | MR. ATWELL:  Good morning, Your Honor.  Stephen Atwell          |
| 10:33AM  | 9  | for the City and County of Honolulu as well as Sergeant         |
| 10:33AM  | 10 | Maioho-Pohina.                                                  |
| 10:33AM  | 11 | MR. ORTIZ:  Good morning, Your Honor.  Jonathan Ortiz           |
| 10:33AM  | 12 | and Leighton Hara for Defendant Letoto.                         |
| 10:33AM  | 13 | THE COURT:  All right.  Good morning, Mr. Ortiz.                |
| 10:33AM  | 14 | So we are here on the motions and the Court has issued          |
| 10:33AM  | 15 | an inclination, and so I'm happy to hear your arguments with     |
| 10:33AM  | 16 | regard to the inclination as well as your arguments that you     |
| 10:34AM  | 17 | have contained in your motion.                                  |
| 10:34AM  | 18 | So we will start first with Mr. Atwell.  Do you want            |
| 10:34AM  | 19 | to address both at the same time, or do you wish to address the  |
| 10:34AM  | 20 | City and County of Honolulu first?                              |
| 10:34AM  | 21 | MR. ATWELL:  Your Honor, I can address both at the              |
| 10:34AM  | 22 | same time.                                                      |
| 10:34AM  | 23 | THE COURT:  Very good.                                          |
| 10:34AM  | 24 | MR. ATWELL:  May I approach the podium?                         |
| 10:34AM  | 25 | THE COURT:  Whichever is more comfortable for you.             |

| | | |
|---|---|---|
| 10:34AM | 1 | I'm happy for you to argue from wherever. |
| 10:34AM | 2 | MR. ATWELL:  Thank you, Your Honor.  Your Honor, as I |
| 10:34AM | 3 | mentioned, my name is Stephen Atwell.  I'm a deputy corporation |
| 10:34AM | 4 | counsel for the City and County of Honolulu, and I'm here on |
| 10:34AM | 5 | behalf of two motions, one on behalf of the city and also on |
| 10:34AM | 6 | behalf of the Debra Maioho-Pohina, sergeant for the Honolulu |
| 10:34AM | 7 | Police Department. |
| 10:34AM | 8 | I have just three points that I would like to |
| 10:34AM | 9 | highlight from the Court's inclination which I did find |
| 10:34AM | 10 | tremendously helpful. |
| 10:34AM | 11 | First of which, with regard to the City's motion, as |
| 10:34AM | 12 | we sit here today, I'm prepared to submit that.  I'm in |
| 10:35AM | 13 | agreement with this Court's inclinations as it applies to the |
| 10:35AM | 14 | City's motion.  I'm happy to elaborate further, but just |
| 10:35AM | 15 | briefly, the second amended complaint fails to establish or |
| 10:35AM | 16 | fails to plausibly allege a failure to train claim, |
| 10:35AM | 17 | ratification claim, and therefore plaintiff's claim for Monell |
| 10:35AM | 18 | liability fails. |
| 10:35AM | 19 | I would also like to talk about my second point, the |
| 10:35AM | 20 | allegations against my client Debra Maioho-Pohina as it applies |
| 10:35AM | 21 | to plaintiff's equal protection as well as supervisory |
| 10:35AM | 22 | liability claims, and then also qualified immunity as it |
| 10:35AM | 23 | applies to any of the allegations -- constitutional allegations |
| 10:35AM | 24 | of violations alleged in the second amended complaint. |
| 10:35AM | 25 | And the third point in brief is that plaintiff has |

10:35AM  1    already been given multiple opportunities to amend her

10:35AM  2    complaint and so, because of that and because of the failure to

10:35AM  3    rectify the claims against the City, the request is that the

10:36AM  4    second amended complaint be dismissed with prejudice.

10:36AM  5            Also, as identified in plaintiff's motion in

10:36AM  6    opposition to Debra Maioho-Pohina's motion, if given the

10:36AM  7    opportunity, plaintiff can supplement the pleading with

10:36AM  8    additional facts.  And if the Court decides not to dismiss the

10:36AM  9    claims against Ms. Maioho-Pohina entirely, then that

10:36AM  10   dismissal -- rather, if this Court decides to dismiss the

10:36AM  11   claims against Maioho-Pohina, then I'm asking that it be

10:36AM  12   dismissed so that plaintiff can, if she so chooses, rectify the

10:36AM  13   complaint as best she can with these additional facts as

10:36AM  14   alleged in the opposition.

10:36AM  15           THE COURT:  Let's go to the -- so I've given you an

10:37AM  16   inclination and I am, with regard to the City, inclined to

10:37AM  17   grant the motion but to grant it without prejudice.  I think

10:37AM  18   Ninth Circuit law is very clear that if there is a possibility

10:37AM  19   that additional facts could be -- I share your skepticism that

10:37AM  20   there are facts that can do so, but I believe I'm constrained

10:37AM  21   by the case law to do that.  It's not a motion for summary

10:37AM  22   judgment where the standard would be different.

10:37AM  23           So what do you say in response to that as to why I

10:37AM  24   should dismiss it with prejudice?

10:37AM  25           MR. ATWELL:  Thank you, Your Honor.  I agree that

| | | |
|---|---|---|
| 10:37AM | 1 | generally speaking amendment -- or a dismissal should be |
| 10:37AM | 2 | granted with prejudice where a complaint can be amended to |
| 10:37AM | 3 | rectify those deficiencies.  But there are circumstances by |
| 10:37AM | 4 | which a court need not grant leave to amend another time. |
| 10:37AM | 5 | THE COURT:  Well, I don't want to say it's futile.  So |
| 10:38AM | 6 | for instance if she didn't have standing or something like |
| 10:38AM | 7 | that, then it would be futile.  That's why I would do it |
| 10:38AM | 8 | without prejudice.  And if they believe that they have facts |
| 10:38AM | 9 | that can muster it, then they would file a motion to amend and |
| 10:38AM | 10 | attach the amended complaint and then the magistrate judge |
| 10:38AM | 11 | would review it and decide whether or not to grant it. |
| 10:38AM | 12 | MR. ATWELL:  Yes, Your Honor.  I guess in that case I |
| 10:38AM | 13 | would just highlight for the Court's attention Burke v. |
| 10:38AM | 14 | Countrywide Mortgage Ventures where the court dismissed with |
| 10:38AM | 15 | prejudice the first amended complaint in part because the |
| 10:38AM | 16 | claims suffer from the same deficiencies previously identified |
| 10:38AM | 17 | in the Court's order dismissing the complaint with leave to |
| 10:38AM | 18 | amend.  And then also, Fowlers v. United States DOJ where the |
| 10:38AM | 19 | court dismissed with prejudice the first amended complaint |
| 10:38AM | 20 | because the plaintiff did not heed the court's advice when the |
| 10:38AM | 21 | court once previously granted plaintiff leave to amend and the |
| 10:38AM | 22 | deficiencies and any amendment would be futile. |
| 10:38AM | 23 | THE COURT:  So there is the futility in that one, so I |
| 10:39AM | 24 | think I could do it with prejudice, but that doesn't seem to |
| 10:39AM | 25 | exist here.  Also, it's a relatively new case, it has not been |

10:39AM    1    going on for years and years, so I think we are at an early
10:39AM    2    time.
10:39AM    3          All right, anything else you want to add with regard
10:39AM    4    to your argument or addressing the inclinations by the Court?
10:39AM    5          MR. ATWELL:  With regard to the City's motion, I'm
10:39AM    6    prepared to rest on the submissions.
10:39AM    7          THE COURT:  All right.  Thank you very much.
10:39AM    8          Mr. Kim.
10:39AM    9          MR. KIM:  Good morning, Your Honor.  Regarding the
10:39AM    10   City's motion, plaintiff respectfully submits that the Court's
10:39AM    11   inclination is mistaken in a few respects.  The bottom line is
10:39AM    12   that all three Monell claims alleged against the City are
10:39AM    13   plausible.
10:39AM    14         I kind of want to start with the first critical point
10:39AM    15   on behalf of the plaintiff, which is that the amended complaint
10:40AM    16   in fact has significantly changed since the original complaint.
10:40AM    17   And, specifically, while the inclination cites and appears to
10:40AM    18   rely on the legal standard for a de facto policy, that is a
10:40AM    19   practice or a custom claim, plaintiff no longer asserts such a
10:40AM    20   claim here.  And, in fact, based on the Court's earlier
10:40AM    21   July 2021 order, plaintiff specifically removed those
10:40AM    22   allegations.  And as far as the other changes that were made,
10:40AM    23   additional claims were inserted and substantively, by our
10:40AM    24   count, over 41 whole substantive new paragraphs were added.
10:40AM    25         The bottom line here is that the City has presented to

10:40AM 1   you certain legal standards that relate specifically to an

10:40AM 2   affirmative policy of action relying on informal custom or

10:41AM 3   practice.  And plaintiff concedes and acknowledges that the

10:41AM 4   original complaint did assert that claim.

10:41AM 5        But, again, in response to the Court's electronic

10:41AM 6   order, plaintiff removed that claim entirely and is now

10:41AM 7   asserting three different theories -- well, one of them remains

10:41AM 8   the same, but two different theories.  These rely on a

10:41AM 9   different avenue of Monell liability, which is a policy of

10:41AM 10  inaction.

10:41AM 11       And so I really wanted to start there because I think

10:41AM 12  it's important that the Court apply the -- in other words,

10:41AM 13  while at the top level, Monell liability only exists when there

10:41AM 14  is some policy that is the moving force, etcetera, etcetera.

10:41AM 15  But within that Monell framework there are -- at least the

10:41AM 16  Ninth Circuit has recognized -- three different avenues:

10:41AM 17  policies with action, policies of inaction, and then third the

10:41AM 18  ratification theory.

10:42AM 19       So based on these changes, none of plaintiff's claims,

10:42AM 20  zero, require allegations of, quote, a long standing widespread

10:42AM 21  or well-settled practice or custom that constitutes a standard

10:42AM 22  operating procedure which again is the claim that was asserted

10:42AM 23  previously but is no longer being asserted.

10:42AM 24       But unfortunately that's the standard that the City

10:42AM 25  attempts to hold plaintiff to.  And on page 5 of the motion,

10:42AM  1    the City characterizes plaintiff as asserting a, quote, de

10:42AM  2    facto policy or custom claim.  "De facto policy," the word

10:42AM  3    "custom," I don't even think those words are even mentioned in

10:42AM  4    the operative complaint, and so similarly the court in

10:42AM  5    Hollingsworth versus City and County of Honolulu applied that

10:42AM  6    same legal standard, which the City is quoting.  And that was

10:42AM  7    in turn quoted verbatim in Your Honor's Vargas case which also

10:43AM  8    involved an informal or unwritten practice or custom.

10:43AM  9          The bottom line is that those standards don't apply

10:43AM  10   here and instead there is a different standard.  And

10:43AM  11   specifically, when it comes to policies of inaction, they can

10:43AM  12   be, quote, based on the municipality's failure to implement

10:43AM  13   procedural safeguards to prevent constitutional violations.

10:43AM  14   That language comes straight from the Ninth Circuit case in Sal

10:43AM  15   versus Desert Palace.  And Sal in turn relies on the seminal

10:43AM  16   Monell case within the Ninth Circuit, Oviatt versus Pierce.

10:43AM  17   And in all of these cases, the policy is a policy of inaction.

10:43AM  18   In other words, the plaintiff was alleging the failure to have

10:43AM  19   a specific procedure or policy to rectify a common problem --

10:43AM  20   or common recurring problem could serve as the basis for the

10:43AM  21   City itself to be liable.

10:43AM  22         THE COURT:  Where in the complaint do you think that

10:43AM  23   you folks articulate this common recurring problem?

10:44AM  24         MR. KIM:  So the -- in a few areas of the complaint,

10:44AM  25   Your Honor -- first of all, one point to note about this is

10:44AM  1   that the Ninth Circuit in Hyun Ju Park versus City and County
10:44AM  2   of Honolulu because -- okay, just to step back, and I'll be
10:44AM  3   sure to answer your question because I think understanding the
10:44AM  4   relevant legal standard will help to explain the relevant
10:44AM  5   portions of the complaint.  But in a policy of inaction, in
10:44AM  6   order to guard against sort of automatic respondeat superior
10:44AM  7   liability of a municipality, the Supreme Court and the Ninth
10:44AM  8   Circuit have clarified that a plaintiff also needs to allege or
10:44AM  9   prove deliberate indifference.  And so this sort of goes to how
10:44AM  10  they knew -- how the City knew that there was a problem.
10:44AM  11          However, in Hyun Ju Park versus City and County of
10:44AM  12  Honolulu, the Ninth Circuit clarified that in a specific
10:44AM  13  context, and specifically where plaintiff alleges a facially
10:45AM  14  deficient policy, in other words a policy that on its face is
10:45AM  15  so obviously inadequate, or what have you, that -- I would like
10:45AM  16  to read the quote because I think it's very relevant to the
10:45AM  17  Court's analysis here.  A direct quote from Hyun Ju Park versus
10:45AM  18  City and County of Honolulu, 952 F.3d at 1141:  When that is
10:45AM  19  the case, when a facially deficient policy is alleged,
10:45AM  20  plaintiff, quote, need point only to the policy itself to
10:45AM  21  establish that the municipality's policymakers were on notice
10:45AM  22  that the plaintiff's federally protected rights would likely be
10:45AM  23  violated if they failed to act.
10:45AM  24          So based on that theory, or that legal standard,
10:45AM  25  plaintiff has done that here and specifically -- I'm sorry, I

10:45AM  1  speak loudly sometimes.

10:45AM  2      THE COURT:  That's all right.

10:45AM  3      MR. KIM:  Specifically paragraphs 81 and 82 point to

10:46AM  4  the City's current policies that even remotely target conflicts

10:46AM  5  of interest, and then beyond that the subsequent paragraphs

10:46AM  6  explain how those policies are facially deficient.

10:46AM  7      So, in other words, this is not just a conclusory

10:46AM  8  allegation that a policy is facially deficient.  But then going

10:46AM  9  back to your original question, what are the other instances of

10:46AM  10  notice?

10:46AM  11      Well, plaintiff's sort of initial position is that

10:46AM  12  based on the Park case, no such additional prior instances need

10:46AM  13  to be alleged.  And again I think the Park case makes that very

10:46AM  14  clear.  But even assuming it were required, paragraphs 99 to

10:46AM  15  118 roughly document several egregious instances where police

10:46AM  16  officers abused their power in conflict of interest situations

10:47AM  17  just like the one that occurred here.

10:47AM  18      Because, again, just to emphasize what happened here,

10:47AM  19  my client, Ms. Hall, she had called the police because

10:47AM  20  defendant Officer Koanui -- I'm sorry, Defendant Letoto had

10:47AM  21  assaulted her at her home.  And it turned out that one of the

10:47AM  22  primary officers who responded was close friends and business

10:47AM  23  partners with Defendant Letoto.

10:47AM  24      And the issue here is that was a situation in which

10:47AM  25  there was an egregious conflict of interest which, as the Court

| | | |
|---|---|---|
| 10:47AM | 1 | obviously is well aware, conflicts of interest are -- make it |
| 10:47AM | 2 | much more likely that rules are going to be violated and |
| 10:47AM | 3 | specifically constitutional violations are going to occur.  And |
| 10:47AM | 4 | for that reason, in the practice of law, there are all these |
| 10:47AM | 5 | rules about recusing yourself. |
| 10:48AM | 6 | THE COURT:  Yes -- |
| 10:48AM | 7 | MR. KIM:  But the point here is that the City makes a |
| 10:48AM | 8 | bunch of arguments about how all of these prior incidents have |
| 10:48AM | 9 | no factual similarity to what happened here.  And, for example, |
| 10:48AM | 10 | the City observes that in the Hollingsworth case it involved |
| 10:48AM | 11 | the theft of a horse, and this case does not involve horses. |
| 10:48AM | 12 | THE COURT:  It doesn't have to be on all fours, right. |
| 10:48AM | 13 | It's the basic issue of conflict of interest.  So you've |
| 10:48AM | 14 | identified portions, so you feel that plaintiff has |
| 10:48AM | 15 | sufficiently identified this theory and put them on notice and |
| 10:48AM | 16 | specified about it being -- their policy being facially |
| 10:48AM | 17 | improper so that it's sufficient to go forth. |
| 10:48AM | 18 | MR. KIM:  Yes, just to clarify though, our baseline |
| 10:48AM | 19 | position is that prior specific instances don't need to be |
| 10:48AM | 20 | alleged as to the facial deficiency argument.  However, another |
| 10:48AM | 21 | way to show deliberate indifference in the absence of a |
| 10:49AM | 22 | facially deficient policy is to point to a pattern of incidents |
| 10:49AM | 23 | that put the City on notice.  And as to that alternative basis |
| 10:49AM | 24 | for finding deliberate indifference, yes, Your Honor. |
| 10:49AM | 25 | Paragraph -- at least paragraphs 99 to 119 gives some of those |

10:49AM   1   prior examples.

10:49AM   2        The other important thing to note is that the inquiry

10:49AM   3   about deliberate indifference is whether the City had adequate

10:49AM   4   notice.  And not only does the complaint include these prior

10:49AM   5   instances, but there are other allegations that make very

10:49AM   6   plausible, at least at this stage when under the Rule 12

10:49AM   7   standard, the well-pled facts are construed in the light most

10:49AM   8   favorable to plaintiffs, that clarify that actually the City

10:49AM   9   had actual notice.

10:49AM   10        And specifically, in November of 2020, the Honolulu

10:49AM   11   Police Commission, after considering and having heard -- having

10:50AM   12   had many meetings to discuss the problem of conflicts of

10:50AM   13   interest in policing, including around the litigation that is

10:50AM   14   mentioned at paragraph 107 to 112, the police commission

10:50AM   15   formally voted to request that the police department implement

10:50AM   16   an explicit -- and that's direct language -- an explicit

10:50AM   17   conflict of interest policy, and I forget the precise language,

10:50AM   18   that prohibits officers from engaging in encounters where there

10:50AM   19   is a conflict of interest.

10:50AM   20        In addition to that, in December of 2020 the city

10:50AM   21   auditor also had analyzed and assessed, in the wake of the

10:50AM   22   Kealoha scandal, which is one of what we believe is another one

10:50AM   23   of the incidents that put the City sort of on notice of its

10:50AM   24   serious problems around conflicts of interest, but in that

10:50AM   25   report I want to read a little bit of a direct quote here.

10:51AM   1        THE COURT:  You don't have to.

10:51AM   2        MR. KIM:  Okay.  But the Court noted widespread

10:51AM   3   evidence of conflicts of interest.  Of course the City has made

10:51AM   4   the argument in reply that those two events occurred after the

10:51AM   5   incident in question, but that isn't dispositive because that

10:51AM   6   argument was made in reply for the first time.  We were unable

10:51AM   7   to address it, and so I'll just point the Court to -- it is,

10:51AM   8   I'm sorry, let me just find the -- okay, so in Henry versus

10:51AM   9   County of Shasta 132 F.3d 512, a Ninth Circuit published

10:51AM  10   opinion, the court reiterated a rule that post-event evidence

10:51AM  11   is not only admissible, for purposes of proving the existence

10:51AM  12   of a municipal defendant's policy or custom, but is highly

10:52AM  13   probative with respect to that inquiry.  The point is of course

10:52AM  14   those were the final acts of the auditor and the police

10:52AM  15   commission.  But in the months and years preceding that --

10:52AM  16        THE COURT:  Right, before that.  Okay.

10:52AM  17        MR. KIM:  So I think I've adequately explained why the

10:52AM  18   inclination is mistaken as to the City -- as to the two

10:52AM  19   policies of inaction.  But I also wanted to highlight that the

10:52AM  20   ratification claim, that has an entirely separate legal

10:52AM  21   standard from either the policy of action claim or the policy

10:52AM  22   of inaction.  And importantly that claim does not rely at all

10:52AM  23   on any sort of pattern, and it can be predicated on a single

10:52AM  24   constitutional violation.

10:52AM  25        So even if the Court finds that the allegations of

| | | |
|---|---|---|
| 10:52AM | 1 | prior incidents somehow aren't relevant or that the policy |
| 10:52AM | 2 | isn't facially deficient, that wouldn't necessarily -- that not |
| 10:53AM | 3 | only wouldn't necessarily, would not dispose of the |
| 10:53AM | 4 | ratification claim, because again the premise behind that sort |
| 10:53AM | 5 | of theory is that when a final policy maker does something to |
| 10:53AM | 6 | ratify or condone a specific instance of a constitutional |
| 10:53AM | 7 | violation, that becomes attributable to the City itself. |
| 10:53AM | 8 | As to that claim, Your Honor, the opposition I think |
| 10:53AM | 9 | thoroughly outlines the relevant legal standard and points to |
| 10:53AM | 10 | the relevant portions of the complaint that established that. |
| 10:53AM | 11 | And one really important point here is that it's often alleged |
| 10:53AM | 12 | in these sorts of cases against municipalities, ratification |
| 10:53AM | 13 | claims are just sort of thrown in willy-nilly without much |
| 10:53AM | 14 | thought, and oftentimes it's because the complaint doesn't |
| 10:54AM | 15 | identify specifically what act constituted the ratification. |
| 10:54AM | 16 | Here the complaint is pointing to a very specific, very |
| 10:54AM | 17 | particular act. And it's the letter that HPD Interim Chief |
| 10:54AM | 18 | Vanic sent in response to Ms. Hall's original demand letter. |
| 10:54AM | 19 | The City would have you interpret that in a certain |
| 10:54AM | 20 | way, but the point is at this stage on a motion to dismiss, |
| 10:54AM | 21 | 12(b)(6), that needs to be construed in the light most |
| 10:54AM | 22 | favorable to plaintiff. And respectfully, whether that act was |
| 10:54AM | 23 | ratification is a jury question, and I know I'm jumping ahead a |
| 10:54AM | 24 | little bit, but -- |
| 10:54AM | 25 | THE COURT: At least for summary judgment. |

| | | |
|---|---|---|
| 10:54AM | 1 | MR. KIM:  Exactly.  Exactly.  So I believe as to the |
| 10:54AM | 2 | City that is -- I'll check my notes, but are there any |
| 10:55AM | 3 | questions -- |
| 10:55AM | 4 | THE COURT:  No, I don't have any questions. |
| 10:55AM | 5 | MR. KIM:  -- regarding the City? |
| 10:55AM | 6 | THE COURT:  As to the other defendants, do you have |
| 10:55AM | 7 | anything? |
| 10:55AM | 8 | MR. KIM:  As to the other defendant, Your Honor, as to |
| 10:55AM | 9 | Ms. Maioho-Pohina, plaintiff has a few points of agreement as |
| 10:55AM | 10 | well as a few points of disagreement with the Court's |
| 10:55AM | 11 | inclination.  But in short, plaintiff firmly agrees with the |
| 10:55AM | 12 | Court's inclination as to the equal protection claim.  But we |
| 10:55AM | 13 | would just request that the Court clarifies the sort of |
| 10:55AM | 14 | theories that remain open to proving her liability under that |
| 10:55AM | 15 | claim.  And specifically plaintiff would request that the Court |
| 10:55AM | 16 | clarify that she could proceed not just under a theory of |
| 10:55AM | 17 | supervisory liability but also sort of, whatever you want to |
| 10:55AM | 18 | call it, more direct liability, in the sense that based on the |
| 10:55AM | 19 | facts that we know, we've alleged what we have, but it is very |
| 10:56AM | 20 | possible that she had a more direct -- an even more direct role |
| 10:56AM | 21 | that made her primarily liable as opposed to supervisorially |
| 10:56AM | 22 | liable. |
| 10:56AM | 23 | THE COURT:  I have to look at how you pled that in |
| 10:56AM | 24 | terms of what her specific acts are.  I'm not going to make the |
| 10:56AM | 25 | claim -- |

10:56AM  1            MR. KIM:  Understood.  And even on that point, even

10:56AM  2    though of course the complaint mentions a bunch of times that

10:56AM  3    she is a supervisor and that she is the sergeant, it is

10:56AM  4    important that there are a series of allegations that show that

10:56AM  5    she was there on the scene.  And in fact she arrived first on

10:56AM  6    scene while the two lead officers were there, so we don't know

10:56AM  7    exactly how many minutes --

10:56AM  8            THE COURT:  But she can be physically there, but that

10:56AM  9    doesn't mean just from her mere presence results in liability.

10:56AM  10   You have to indicate that she had a conflict of interest

10:56AM  11   herself or if she did something affirmatively or failed to do

10:56AM  12   something.

10:56AM  13           MR. KIM:  Of course, Your Honor.

10:56AM  14           THE COURT:  But if she failed to do something, maybe

10:56AM  15   that's more a supervisory liability issue.  I don't know.  I'd

10:57AM  16   have to look at the complaint again.

10:57AM  17           MR. KIM:  Understood, Your Honor.  And I would

10:57AM  18   specifically point the Court to the language in paragraph 72

10:57AM  19   where -- this was actually I believe the second or maybe the

10:57AM  20   third time that Mr. Maioho-Pohina returned to the scene where

10:57AM  21   she acknowledged to plaintiff that something was, quote, very

10:57AM  22   wrong with the situation.

10:57AM  23           Now the question is obviously -- and the City has --

10:57AM  24           THE COURT:  But how would that be direct liability for

10:57AM  25   her?

10:57AM  1              MR. KIM:  Maybe not in that situation, but what I'm

10:57AM  2      trying to suggest here, Your Honor, is that by saying that the

10:57AM  3      situation was very wrong, it is highly plausible -- or maybe

10:57AM  4      not highly plausible, is at least plausible that at some point

10:57AM  5      during the incident, you would expect that she spoke to

10:57AM  6      Officers Castillo and Koanui to try and understand what was

10:57AM  7      going on.  And as alleged what was happening here was that

10:57AM  8      Officer Koanui was trying to basically frame Ms. Hall to cover

10:57AM  9      up and protect his friend and business partner.  And so it is

10:58AM  10     entirely plausible that they were supporting each other in that

10:58AM  11     endeavor and that's sort of why --

10:58AM  12             THE COURT:  You have to allege that.  I mean, you

10:58AM  13     can't just have a supposition, people were on the same place,

10:58AM  14     these two were doing, and therefore she knew what was going on

10:58AM  15     and so she actively supported them in that.  I mean, if

10:58AM  16     somebody comes up to someone who has been in an accident

10:58AM  17     saying, I'm so sorry this happened to you, that isn't an

10:58AM  18     indication of liability or responsibility, right, for the

10:58AM  19     accident.

10:58AM  20             So I understand what you're saying that there was some

10:58AM  21     sort of knowledge or collusion or what have you, but you can't

10:58AM  22     have a supposition that because she was seen talking to them or

10:58AM  23     you would presume that she would talk to them, being the

10:58AM  24     supervisor and these were the officers involved, that she had

10:58AM  25     knowledge and deliberately hid that knowledge or did something

| | | |
|---|---|---|
| 10:58AM | 1 | so that they would avoid responsibility. |
| 10:59AM | 2 | MR. KIM: Understood, Your Honor. |
| 10:59AM | 3 | THE COURT: And it may come in discovery that that may |
| 10:59AM | 4 | be true, you know, and then you may amend at that point. So I |
| 10:59AM | 5 | understand that you want me to extend it to direct or |
| 10:59AM | 6 | individual liability for her, but I have to look at the |
| 10:59AM | 7 | complaint at this stage anyway. |
| 10:59AM | 8 | MR. KIM: Understood. Understood. |
| 10:59AM | 9 | THE COURT: Motion for summary judgment you guys might |
| 10:59AM | 10 | have a lot more evidence for me and then I would take a look at |
| 10:59AM | 11 | that. |
| 10:59AM | 12 | MR. KIM: Understood. And so then if the Court agrees |
| 10:59AM | 13 | not to dismiss claim five and allows at least the proceeding on |
| 10:59AM | 14 | this sort of supervisory liability theory as to the equal |
| 10:59AM | 15 | protection claim, then plaintiff would have no opposition to |
| 10:59AM | 16 | the dismissal of claim seven which was framed -- this was sort |
| 10:59AM | 17 | of pleading in the alternative or sort of a back step argument, |
| 10:59AM | 18 | so long as claim five survives. |
| 10:59AM | 19 | I don't think -- unless the Court has specific |
| 11:00AM | 20 | questions as to the equal protection issue, I think the |
| 11:00AM | 21 | Elliot-Park versus Manglona case is both factually relevant and |
| 11:00AM | 22 | then also clearly establishes that the right to equal provision |
| 11:00AM | 23 | of police services is well established; so I won't go any |
| 11:00AM | 24 | further on there. |
| 11:00AM | 25 | As to claim four, the malicious abuse of process |

11:00AM   1   claim.  Plaintiff does acknowledge that the Ninth Circuit has

11:00AM   2   never explicitly said in a published opinion that a malicious

11:00AM   3   abuse of process claim is cognizable under Section 1983.

11:00AM   4   However, the fact that it hasn't affirmatively said that in a

11:00AM   5   court opinion doesn't mean that those claims have never --  are

11:00AM   6   not recognized.

11:00AM   7        And specifically Navarro versus -- so there are a

11:00AM   8   couple of cases that the plaintiff cites in opposition, but one

11:00AM   9   of them is West versus Atkins, I believe -- and the point is

11:01AM  10   that in those Ninth Circuit decisions -- admittedly they were

11:01AM  11   unpublished, in those Ninth Circuit decisions they addressed

11:01AM  12   Section 1983 malicious abuse of process claims on the merits.

11:01AM  13   In other words, they didn't dismiss them by saying that they

11:01AM  14   are not cognizable.  They just said that -- the court just said

11:01AM  15   that plaintiff had not sufficiently pleaded the elements.

11:01AM  16        So as to that issue, one of the -- one way that

11:01AM  17   plaintiff respectfully submits that the inclination is mistaken

11:01AM  18   is that it appears to import the legal -- an element of the

11:01AM  19   legal standard that isn't necessarily required.  And in fact --

11:01AM  20   and that's specifically the egregious conscious-shocking

11:01AM  21   conduct.  And the only authority cited by the City for that

11:01AM  22   principle is the Char versus Simeona case.  And the Char versus

11:02AM  23   Simeona case involved a pro se plaintiff and that proposition

11:02AM  24   cited only to a treatise and did not cite to a Ninth Circuit

11:02AM  25   authority relating to the elements.

11:02AM   1        However, Awabdy versus City of Adelanto this is what
11:02AM   2    the Ninth Circuit does when looking at what are the elements of
11:02AM   3    common law torts that are imported into and considered under
11:02AM   4    Section 1983.  In Awabdy versus City of Adelanto when a
11:02AM   5    malicious prosecution claim was asserted under Section 1983,
11:02AM   6    the court did what all the courts across the country do, which
11:02AM   7    is to import or look to the relevant state law.  That is the
11:02AM   8    approach that the Court should be adopting here.  And under
11:02AM   9    that, under the Hawaii Supreme Court in Young versus Allstate,
11:02AM   10   Inc., there are only two elements:  One is the ulterior purpose
11:03AM   11   and the other is the willful act or the abuse of the process.
11:03AM   12   And the complaint adequately alleges both of those.
11:03AM   13       And then finally, even assuming egregious or
11:03AM   14   conscious-shocking conduct is required, plaintiff would submit
11:03AM   15   that what happened here was egregious and conscious shocking.
11:03AM   16   Again, when we have conflict of interest situations where
11:03AM   17   police officers are framing, intimidating, and silencing
11:03AM   18   innocent crime victims so that they can protect their friend
11:03AM   19   and business partner, that is as egregious and conscious
11:03AM   20   shocking as we can get.  And plaintiff concedes that those
11:03AM   21   words, those magic words, were not alleged, but that
11:03AM   22   shouldn't -- again, that's not a required element, and it
11:03AM   23   shouldn't preclude the malicious abuse of process claim.
11:03AM   24       THE COURT:  Thank you very much.
11:03AM   25       MR. KIM:  Unless the Court has any other questions or

11:03AM    1    concerns...

11:04AM    2              THE COURT:  I do not.  Thank you.

11:04AM    3              MR. KIM:  Thank you.

11:04AM    4              THE COURT:  Mr. Atwell.

11:04AM    5              MR. ATWELL:  Thank you, Your Honor.

11:04AM    6              THE COURT:  I'll give you five minutes.

11:04AM    7              MR. ATWELL:  I'll do my best, Your Honor.  I try to be

11:04AM    8    brief in my introductions touching upon the City's argument,

11:04AM    9    but I have quite a bit more to say as to the other client Debra

10:36AM    10    Maioho-Pohina.

11:04AM    11              Touching upon the City's argument, I think it's

11:04AM    12    important here to remember today the fundamental standard that

11:04AM    13    a complaint must satisfy.  From Starr v. Baca the complaint

11:04AM    14    must have allegations --

11:04AM    15              THE COURT:  I understand what it has to have, and so I

11:04AM    16    would like you to address Mr. Kim's argument about the standard

11:04AM    17    that the Court should apply, and he's raised several of them.

11:04AM    18    That would be helpful to me.  Thank you.

11:04AM    19              MR. ATWELL:  With regard to whether or not there is a

11:04AM    20    facially deficient policy, as plaintiff alleges, this

11:04AM    21    allegation is wholly conclusory.  Plaintiff fails to point to

11:05AM    22    any court anywhere in this country that has found that a

11:05AM    23    failure to have a conflict of interest policy is a

11:05AM    24    constitutional violation.

11:05AM    25              So simply speaking, plaintiff cannot establish and

11:05AM  1    does not establish -- doesn't even show that the City's
11:05AM  2    conflict of interest policy or the lack thereof, as plaintiff
11:05AM  3    alleges, is fundamentally a facially deficient policy such that
11:05AM  4    it violates the constitution.
11:05AM  5        As plaintiff concedes in the second amended complaint,
11:05AM  6    there are numerous instances within HPD policy that pertain to
11:05AM  7    conflicts of interest.  These are referenced in the second
11:05AM  8    amended complaint in paragraph 60, 61 and 62, citing police
11:05AM  9    policies 221 and 806.  The City was not deliberately
11:05AM  10   indifferent as well.  The number of policies that were alleged
11:05AM  11   or other misconduct instances that were alleged, plaintiff
11:05AM  12   specifically referenced in the proceedings here today
11:05AM  13   Hollingsworth.
11:06AM  14       In Hollingsworth, the City evaluated a number of the
11:06AM  15   same alleged examples that plaintiff raised in their opposition
11:06AM  16   and in their complaint for that matter.  And the Court found
11:06AM  17   those instances wanting.  And in that case, in Hollingsworth,
11:06AM  18   the court in fact dismissed with prejudice plaintiff's claims
11:06AM  19   against the City and found there was no Monell liability or
11:06AM  20   that it had not been sufficiently alleged.
11:06AM  21       THE COURT:  What about his arguments on malicious
11:06AM  22   prosecution, that a requirement, in looking at the elements,
11:06AM  23   does not include egregious or conscious-shocking behavior?  I
11:06AM  24   don't think they sufficiently set it out, if it did have it.
11:06AM  25   But he is making the point that really isn't -- one, it's not

11:06AM   1   dispositive that the Ninth Circuit has not recognized in a

11:06AM   2   published decision that such a claim exists under 1983; but

11:06AM   3   two, you would look at Hawaii law for that tort or that action

11:06AM   4   and that the elements do not include egregious or

11:07AM   5   conscious-shocking conduct.

11:07AM   6        Do you agree with that, that analysis that I should

11:07AM   7   look at a malicious prosecution claim under 1983 by turning to

11:07AM   8   state law that defines such a claim?  And if I did so, the

11:07AM   9   Hawaii state law does not contain a requirement that the

11:07AM   10  plaintiff demonstrate egregious or conscious-shocking behavior.

11:07AM   11       MR. ATWELL:  Your Honor, it's my understanding that

11:07AM   12  the state law with regard to abuse of process does not contain

11:07AM   13  the conscious shocking requirement, but that doesn't mean that

11:07AM   14  that's the applicable standard that should be applied in the

11:07AM   15  Section 1983 case to an abuse of process claim.

11:07AM   16       I think it's important to note and also, as more fully

11:07AM   17  detailed in Maioho-Pohina's reply, that even if we were to

11:07AM   18  adopt the state standard that plaintiff suggests, well,

11:07AM   19  plaintiff fails to satisfy that standard, specifically with

11:07AM   20  regard to the second element in identifying some definite act

11:08AM   21  or threat not authorized by the process as this court in

11:08AM   22  Gallagher v. Maternitywise in 2020.

11:08AM   23       So regardless of the approach, the framework we use,

11:08AM   24  either the 1983 malicious prosecution or the state abuse of

11:08AM   25  process, in either instance the plaintiff's second amended

11:08AM  1  complaint fails to state a viable claim.

11:08AM  2       In terms of ratification.  I'll be brief on this

11:08AM  3  point, Your Honor, because I think it is important.  Plaintiff

11:08AM  4  highlights the fact that there was a letter from Interim Chief

11:08AM  5  Vanic to plaintiff and suggested this was ratification.

11:08AM  6  Plaintiff relies on this letter for ratification, but plaintiff

11:08AM  7  would ask this Court turn a blind eye to what's actually

11:08AM  8  included in the letter.

11:08AM  9       And I think it's important to note that the City does

11:08AM  10  not point to this letter for the truth of the matter asserted

11:08AM  11  but for the fact that these things were said.  This is a record

11:08AM  12  of what was communicated.  And if this Court were to look at

11:08AM  13  the letter, it becomes clear that, contrary to what plaintiff

11:09AM  14  alleges, nothing about this letter ratifies or endorses any of

11:09AM  15  the officer defendants' actions in this case.

11:09AM  16       Turning to Debra Maioho-Pohina, plaintiff fails to

11:09AM  17  satisfy to state a viable equal protection claim and fails to

11:09AM  18  state a viable supervisory liability claim.  And then also

11:09AM  19  fundamentally with regard to qualified immunity, the proper

11:09AM  20  analysis is whether an individual officer's conduct

11:09AM  21  specifically was clearly established to have violated a

11:09AM  22  constitutional right.  And this is an individualized analysis.

11:09AM  23       In Cunningham v. Gates, the Ninth Circuit faulted the

11:09AM  24  district court when it said, and I quote, The district court

11:09AM  25  never conducted individualized analysis to determine whether

| | | |
|---|---|---|
| 11:09AM | 1 | each defendant was entitled to qualified immunity based on his |
| 11:10AM | 2 | or her individualized actions.  And when we look to the actions |
| 11:10AM | 3 | of Debra Maioho-Pohina, she spoke with plaintiff at plaintiff's |
| 11:10AM | 4 | house, she did not intervene as alleged to stop Koanui's |
| 11:10AM | 5 | misconduct. |
| 11:10AM | 6 | But as Your Honor identified this morning, there was |
| 11:10AM | 7 | no indication that she was aware of any misconduct.  In |
| 11:10AM | 8 | paragraph 67 of the second amended complaint, it makes clear |
| 11:10AM | 9 | that Maioho-Pohina arrived on the scene after many of the |
| 11:10AM | 10 | allegations in the second amended complaint had already |
| 11:10AM | 11 | transpired. |
| 11:10AM | 12 | And with regard to Debra Maioho-Pohina's conduct, I |
| 11:10AM | 13 | think it's most important that we recognize that plaintiff |
| 11:10AM | 14 | fails to plead facts that demonstrate that she directly |
| 11:10AM | 15 | participated in any alleged constitutional violation.  Nowhere |
| 11:10AM | 16 | is it alleged that Maioho-Pohina refused to allow plaintiff to |
| 11:10AM | 17 | file a police report.  And in fact none of the officers in this |
| 11:10AM | 18 | case refused to allow her to provide a police report. |
| 11:11AM | 19 | As the second amended complaint makes clear, she was |
| 11:11AM | 20 | provided with that opportunity, but Officer Koanui notified her |
| 11:11AM | 21 | that there is a pending theft claim against you.  And the |
| 11:11AM | 22 | reason for this is simple.  If she were to make a statement |
| 11:11AM | 23 | that subjected her to criminal liability for the theft, he's |
| 11:11AM | 24 | warning her to be mindful of what you say, because essentially |
| 11:11AM | 25 | what you can say and what you do say can and will be used |

11:11AM  1  against you.  So that was essentially a de facto warning for

11:11AM  2  plaintiff's own well-being and preservation of her own rights.

11:11AM  3        THE COURT:  He didn't use those words, but okay.

11:11AM  4        MR. ATWELL:  Your Honor, I believe it said that there

11:11AM  5  is a pending claim against you for theft, so please be --

11:11AM  6  perhaps she didn't say please be mindful, but at least there is

11:11AM  7  a rational basis for understanding those actions.  That's

11:11AM  8  relevant with regard --

11:11AM  9        THE COURT:  At this point, I have to look at it in the

11:12AM  10  light most favorable to her.  So just in isolation it also can

11:12AM  11  be a threat, it can be perceived as a threat.  Now, on a

11:12AM  12  summary judgment standard, it might be different.  But on a

11:12AM  13  motion to dismiss standard, I have to -- all inferences are

11:12AM  14  construed in her favor.

11:12AM  15        MR. ATWELL:  Yes, Your Honor.  And I think that it's

11:12AM  16  important, for the purposes of qualified immunity, to evaluate

11:12AM  17  what specifically it was that Debra Maioho-Pohina did and

11:12AM  18  whether any of those actions individually violated a clearly

11:12AM  19  established constitutional right.  And that is not the case.

11:12AM  20  She never refused to allow plaintiff to submit a police report

11:12AM  21  either during the initial instance or when she was asked by

11:12AM  22  plaintiff to return to her home.  And she never threatened any

11:12AM  23  retaliation, either veiled or otherwise, against plaintiff.  So

11:12AM  24  it can't be said that Debra Maioho-Pohina committed a

11:13AM  25  constitutional violation.

11:13AM   1          And in terms of supervisory liability, she did not

11:13AM   2   approve, she did not endorse any of the actions of the officer

11:13AM   3   defendants, even if they did constitute a constitutional

11:13AM   4   violation.

11:13AM   5          Now, plaintiff points to a number of cases where it's

11:13AM   6   alleged that after the fact a supervisor, who was not actually

11:13AM   7   physically present, can be found liable for supervisory

11:13AM   8   liability.  And that's the Larez (phonetic) case as well as

11:13AM   9   Watkins and an Eighth Circuit case called White.  In those

11:13AM  10   cases, those were instances where there was a formal complaint

11:13AM  11   filed and the supervisor signed off on dismissing those --

11:13AM  12          THE COURT:  I understand it was more involved, but she

11:13AM  13   gets to the scene, she -- looking at the inferences in favor of

11:13AM  14   the plaintiff, she is aware that there is this conflict of

11:13AM  15   interest and she doesn't take Koanui off the case.

11:13AM  16          MR. ATWELL:  Your Honor, it's not alleged anywhere in

11:13AM  17   the second amended complaint that she was made aware of the

11:14AM  18   conflict of interest.  In fact, plaintiff herself was unaware

11:14AM  19   of this alleged conflict of interest until much later; so it's

11:14AM  20   far from clear that --

11:14AM  21          THE COURT:  Okay, so maybe not at the scene but

11:14AM  22   subsequently, and then she lets it proceed.  And that is -- I

11:14AM  23   mean, at that time it was clearly established, right, that

11:14AM  24   there is a conflict of interest.  You shouldn't let -- you can

11:14AM  25   violate the person's constitutional right.

11:14AM   1          So at a motion to dismiss stage, I have to look at all

11:14AM   2    inferences in favor of the plaintiff.  And that's what makes it

11:14AM   3    tough.  You're asking for qualified immunity on a motion to

11:14AM   4    dismiss.  So I have to look at all of these factors and any

11:14AM   5    reasonable inferences in favor of the plaintiff.  That's why

11:14AM   6    I'm saying it's just a tough standard with regard to that.  And

11:14AM   7    that's true that it may not.  Now a motion for summary judgment

11:14AM   8    standard, it might be different.

11:14AM   9          MR. ATWELL:  Your Honor, one of the purposes of

11:14AM   10   qualified immunity is to avoid subjecting governmental

11:15AM   11   officials to the scrutiny of litigation and discovery.  That's

11:15AM   12   one of the fundamental purposes of qualified immunity.

11:15AM   13          But even taking a step back from there, there is

11:15AM   14   nothing in the second amended complaint that makes it clear

11:15AM   15   that Debra Maioho-Pohina had any awareness of this conflict of

11:15AM   16   interest until either, A, after the lawsuit was filed in 2021,

11:15AM   17   or at the earliest, perhaps when the letter was submitted by

11:15AM   18   plaintiff to Chief Vanic or the PSO office.  And at that point,

11:15AM   19   we are talking about something almost two years after the

11:15AM   20   incident.

11:15AM   21          THE COURT:  Okay.  Well, I'll take a look at the

11:15AM   22   complaint again.

11:15AM   23          MR. ATWELL:  Thank you, Your Honor.

11:15AM   24          THE COURT:  All right, thank you.  I consider the

11:15AM   25   matter under submission, and we will issue a written decision.

| | | |
|---|---|---|
| 11:15AM | 1 | Good day everyone, I wish you a good weekend. |
| 11:15AM | 2 | (Proceedings were concluded at 11:15 a.m.) |
| | 3 | |
| | 4 | |
| | 5 | |
| | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
 1              COURT REPORTER'S CERTIFICATE
 2          I, Gloria T. Bediamol, Official Court Reporter, United
 3   States District Court, District of Hawaii, do hereby certify
 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 5   true, and correct transcript from the stenographically reported
 6   proceedings held in the above-entitled matter and that the
 7   transcript page format is in conformance with the regulations
 8   of the Judicial Conference of the United States.
 9
10          DATED at Honolulu, Hawaii, [!CERT DATE], 2022.
11
12
13                              /s/ Gloria T. Bediamol
14                              GLORIA T. BEDIAMOL.
15                              RMR, CRR, FCRR
16
17
18
19
20
21
22
23
24
25
```