UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ROBIN HALL,<br><br>                Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF HONOLULU,<br>CHRISTOPHER KOANUI, LEONARD<br>LETOTO, DEBRA MAIOHO-POHINA,<br>DOE OFFICER 1,  DOE OFFICER 2,<br>JOHN LEO CASTILLO,<br><br>                Defendants. | CIV. NO. 21-00248 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS DEBRA MAIOHO-POHINA AND JOHN LEO CASTILLO'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Before the Court is Defendants Debra Maioho-Pohina ("Maioho-Pohina") and John Leo Castillo's ("Castillo" and collectively "City Defendants") Motion to Dismiss Third Amended Complaint ("Motion"), filed on July 3, 2023. [Dkt. no. 110.] Plaintiff Robin Hall ("Plaintiff" or "Hall") filed her memorandum in opposition on August 25, 2023, and Maioho-Pohina and Castillo filed their reply on September 1, 2023. [Dkt. nos. 126, 127.] Defendants Leonard Letoto ("Letoto") and Christopher Koanui ("Koanui") filed statements of no position on August 25, 2023. [Dkt. nos. 124, 125.] Hall filed a supplemental memorandum on September 18, 2023, and the City Defendants filed a response to Hall's supplemental memorandum on September 28,

2023. [Dkt. nos. 132, 133.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). The City Defendants' Motion is hereby granted in part and denied in part for the reasons set forth below. The Motion is granted insofar as the following claims are dismissed with prejudice: the abuse of process claim against the City Defendants; the First Amendment claim against Maioho-Pohina; the portion of the First Amendment retaliation claim against Maioho-Pohina that is based upon Hall's arrest at Hall's residence; the Fourth Amendment claim against Maioho-Pohina; and the equal protection claim against Maioho-Pohina. The Motion is denied in all other respects.

## BACKGROUND

Hall filed her original complaint on June 9, 2021. [Dkt. no. 1.] She filed her First Amended Complaint for Declaratory and Injunctive Relief and Damages on September 2, 2021, and she filed her Second Amended Complaint for Declaratory and Injunctive Relief and Damages ("Second Amended Complaint") on October 28, 2021. [Dkt. nos. 27, 36.] On April 26, 2022, this Court issued an order that, among other things, granted in part and denied in part Maioho-Pohina's motion to dismiss the Second

Amended Complaint ("4/26/22 Order"). [Dkt. no. 67.[1]] In the 4/26/22 Order, this Court: dismissed Hall's Title 42 United States Code Section 1983 abuse of process of process claim; denied Maioho-Pohina's request to dismiss Hall's Section 1983 equal protection claim based on qualified immunity; and dismissed Hall's supervisory liability claim because it merely pled the theory of liability that Hall's other two claims against Maioho-Pohina were based upon. 4/26/22 Order, 2022 WL 1229965, at *8-9. The dismissal of Hall's abuse of process claim and supervisory liability claim against Maioho-Pohina was without prejudice to Hall's filing of a motion for leave to file a third amended complaint. Id. at *10.

Maioho-Pohina took an interlocutory appeal from that portion of the 4/26/22 Order. See Maioho-Pohina's notice of appeal, filed 5/6/22 (dkt. no. 71); Ninth Circuit Memorandum, filed 5/3/23 (dkt. no. 97), at 2 n.1 (noting that the appeal only involved the portion of the order denying Maioho-Pohina's motion to dismiss Hall's equal protection claim).[2] The Ninth Circuit reversed and remanded with instructions to dismiss Hall's equal protection claim because Hall's Second Amended Complaint did not adequately plead supervisory liability, and

---

[1] The 4/26/22 Order is also available at 2022 WL 1229965.

[2] The Ninth Circuit Memorandum is also available at 2023 WL 3220909.

3

Maioho-Pohina was entitled to qualified immunity because Hall failed to allege a constitutional violation. See Ninth Circuit Memorandum, 2023 WL 3220909, at *3.

On remand, this Court dismissed Hall's equal protection claim in the Second Amended Complaint against Maioho-Pohina. [Order Dismissing, Without Prejudice, Plaintiff's Equal Protection Claim Against Defendant Debra Maioho-Pohina, filed 5/30/23 (dkt. no. 99).[3]] On June 6, 2023, the magistrate judge granted Hall leave to file a third amended complaint. [Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File Third Amended Complaint, filed 6/6/23 (dkt. no. 102).]

Hall filed her Third Amended Complaint for Declaratory and Injunctive Relief and Damages ("Third Amended Complaint") on June 20, 2023. [Dkt. no. 106.] The core factual allegations of the Third Amended Complaint are the same as those of the Second Amended Complaint. They are summarized in the 4/26/22 Order and will not be repeated here. See 4/26/22 Order, 2022 WL 1229965, at *1. Briefly, Hall called 911 after a confrontation with Letoto, her boss, at her home on June 10, 2019. Koanui, a Honolulu Police Department ("HPD") Officer and close friend and

_____

[3] The May 30, 2023 order is also available at 2023 WL 3728209.

business partner of Letoto, responded to Hall's 911 call. Because of his relationship with Letoto, Koanui refused to allow Hall to make a police report against Letoto. Further, he made a false criminal report against Hall and arrested her. Castillo, another HPD officer, arrived at the scene with Koanui, and Maioho-Pohina, an HPD sergeant, arrived at the scene later.[4] Hall alleges Koanui, Castillo, and Maioho-Pohina conspired to protect Letoto by refusing to take Hall's report and by filing false police reports against her. Hall alleges that, in this process, Koanui, Castillo, and Maioho-Pohina (collectively "Officer Defendants") violated her constitutional rights. [Third Amended Complaint at ¶¶ 2-6.]

The new factual allegations that Hall added in the Third Amended Complaint will be summarized below, to the extent that they are relevant to the instant Motion. Hall alleges "Sergeant Maioho-Pohina was acting in her capacity as supervising officer of Officers Koanui and Castillo at all relevant times." [Id. at ¶ 18.] Hall also adds the allegation that Castillo (as opposed to only Koanui) retaliated against her by falsely arresting her and that the Officer Defendants filed false police reports against her, alleging she committed theft.

---

[4] Hall made a second 911 call after she spoke to Koanui, and Maioho-Pohina arrived at the scene in response to that call. [Third Amended Complaint at ¶ 72.]

[Id. at ¶ 38.] As to the specific events of June 10, 2019, Hall alleges that, although Koanui and Castillo were purportedly on the scene to respond to Hall's 911 call during which she reported an ongoing assault and breaking and entering, they ignored Letoto when they arrived on the scene, and they did not speak to him during the entire period that they were on the scene. [Id. at ¶¶ 50-52.] Hall alleges Koanui and Castillo did not speak to Letoto because Koanui had informed Castillo of his connection with Letoto and Koanui and Castillo agreed to resolve the situation in Letoto's favor. [Id. at ¶ 54.]

As in the Second Amended Complaint, Hall alleges Koanui refused to allow Hall to make a police report against Letoto, in violation of Hall's First Amendment rights. Compare Second Amended Complaint at ¶ 58 with Third Amended Complaint at ¶ 61. Hall adds the allegation that Castillo violated her First Amendment rights because, although he observed Koanui's interactions with Hall – *i.e.*, Castillo presumably saw Koanui refuse to allow Hall to make complaint against Letoto, Castillo "did not take down, or offer to take down, a report from Plaintiff." [Third Amended Complaint at ¶ 62.]

As in the Second Amended Complaint, Hall alleges Koanui filed a police report alleging Hall committed theft, even though he did not conduct a reasonable investigation and did not have probable cause to support a theft charge against Hall.

Koanui relied exclusively on information provided by Letoto.[5]

Compare Second Amended Complaint at ¶ 62 with Third Amended

Complaint at ¶ 66. Hall adds the following allegations:

> Defendant Officer Castillo and Defendant
> Sergeant Maioho-Pohina also knowingly and
> maliciously provided false, inaccurate, and/or
> misleading and incomplete information on their
> official reports in violation of HPD Policy
> Number 2.21 by corroborating Defendant Officer
> Koanui's account of the incident. In addition,
> both Defendant Officer Castillo and Defendant
> Sergeant Maioho-Pohina's reports made no mention
> of Koanui's conflict of interest, thus furthering
> their mutually agreed-upon goal to protect Letoto
> at the expense of Plaintiff.

[Third Amended Complaint at ¶ 67.]

Hall alleges that, when Maioho-Pohina arrived at

Hall's residence, Maioho-Pohina spoke to Koanui and Castillo in

Hall's driveway for approximately four minutes, and they spoke

amongst themselves at the scene at least two more times after

that. Hall alleges that, during the first private conversation,

Koanui disclosed his connection with Letoto and that he wanted

to protect Letoto. The Officer Defendants agreed to work

together to accomplish this, at Hall's expense. [Id. at ¶¶ 73-

74.] Hall states she spoke to Maioho-Pohina at least two

---

[5] Hall alleges Letoto called Koanui when she began to make
her first 911 call. [Third Amended Complaint at ¶¶ 40-41.]
During that call, Letoto allegedly "alert [Koanui] about the
ongoing 911 call, request that he intervene by responding to the
dispatch, and otherwise enlist his help in preventing Plaintiff
from successfully filing a police complaint against Defendant
Letoto." [Id. at ¶ 41.]

separate times on June 10, 2019 and, when Hall spoke to Maioho-Pohina, Hall "explained the multiple ways in which Officer Koanui had committed misconduct against her." [Id. at ¶ 75.] Thus, Maioho-Pohina had knowledge of Hall's complaints about Koanui and Koanui's conflict of interest, but Maioho-Pohina did nothing to stop Koanui's misconduct. In addition, Maioho-Pohina did not allow Hall to file a police report, and Maioho-Pohina filed a false police report corroborating Koanui's report and failing to disclose Koanui's conflict of interest. [Id. at ¶¶ 76-77, 79.]

Hall alleges Castillo was also aware of Koanui's conflict of interest, observed Koanui's interactions with Hall, and spoke with Koanui several times at the scene, but Castillo did not act upon Koanui's misconduct. Castillo wrote his own police report, but he also failed to disclose Koanui's conflict of interest. [Id. at ¶¶ 78-79.]

Relevant to the instant Motion, Hall asserts the following claims:

-a Section 1983 claim against the Officer Defendants, alleging violation of her First Amendment right to petition the government to seek redress of grievances ("Claim 1");

-a Section 1983 claim against the Officer Defendants, alleging retaliation in violation of her First Amendment rights ("Claim 2");

-a Section 1983 claim against the Officer Defendants, alleging false arrest and imprisonment in violation of her Fourth Amendment rights ("Claim 3");

-a Section 1983 claim against the Officer Defendants, alleging
malicious abuse of process in violation of her Fourteenth
Amendment rights ("Claim 4");

-a Section 1983 claim against the Officer Defendants, alleging
violation of her Fourteenth Amendment equal protection
rights ("Claim 5");

-a Section 1983 claim against the Officer Defendants and Letoto
(all collectively "Defendants"), alleging conspiracy to
interfere with her civil rights ("Claim 6");

-an intentional infliction of emotional distress ("IIED") claim
against Defendants ("Claim 10"); and

-a civil conspiracy claim against Defendants ("Claim 11").

[Id. at pgs. 46-55, 62-63.]

        The City Defendants argue Hall fails to state a claim

against them upon which relief can be granted, and they ask this

Court to dismiss all claims against them with prejudice. [Motion

at 2 (some citations omitted) (citing Fed. R. Civ.

P. 12(b)(6)).] The City Defendants argue Hall's Section 1983

claims against them fail because they are entitled to qualified

immunity, [Motion, Mem. in Supp. at 6-22,] and they argue Hall's

state law claims against them fail because they are entitled to

the qualified or conditional privilege, [id. at 22-24]. In

addition, the City Defendants argue Hall's state law claims are

insufficiently pled. [Id. at 24-25.]

**DISCUSSION**

I.   **Qualified Immunity**

> Qualified immunity "shields government officials
> performing discretionary functions from liability
> for civil damages 'insofar as their conduct does
> not violate clearly established statutory or
> constitutional rights of which a reasonable
> person would have known.'" Scott v. Henrich, 39
> F.3d 912, 914 (9th Cir. 1994) (quoting Harlow v.
> Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727,
> 73 L. Ed. 2d 396 (1982)). When an officer claims
> qualified immunity, we ask "(1) whether there has
> been a violation of a constitutional right; and
> (2) whether that right was clearly established at
> the time of the officer's alleged misconduct."
> Jessop v. City of Fresno, 936 F.3d 937, 940 (9th
> Cir. 2019) (quoting Lal v. California, 746 F.3d
> 1112, 1116 (9th Cir. 2014)). Courts have
> discretion to decide which of the two prongs
> "should be addressed first in light of the
> circumstances in the particular case at hand."
> Pearson v. Callahan, 555 U.S. 223, 236, 129 S.
> Ct. 808, 172 L. Ed. 2d 565 (2009). "Addressing
> the second prong before the first is especially
> appropriate where 'a court will rather quickly
> and easily decide that there was no violation of
> clearly established law.'" Jessop, 936 F.3d at
> 940 (quoting Pearson, 555 U.S. at 239, 129 S. Ct.
> 808).

Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1198 (9th

Cir. 2021).

A.   **Constitutional Violation**

1.   **Castillo**

The elements of a Section 1983 claim are: "(1) a

person acting under color of State law; (2) subjects or causes

to be subjected to deprivation; (3) a U.S. citizen or person in

the jurisdiction of the United States; (4) of a right,

10

privilege, or immunity secured by the Constitution and laws."
Chaudhry v. Aragón, 68 F.4th 1161, 1169 & n.9 (9th Cir. 2023).
Hall alleges that, at all relevant times, Castillo was employed
by HPD as a police officer, and Hall's allegations regarding
Castillo describe conduct in the course of the performance of
his duties. See Third Amended Complaint at ¶ 19; see also, e.g.,
id. at ¶¶ 48-56. Hall states she "is and has been a resident of
the City and County of Honolulu, State of Hawai`i at all
relevant times." [Third Amended Complaint at ¶ 14.] Thus, Hall
has alleged sufficient facts regarding the first and third
elements of her Section 1983 claims. This Court will address the
second and fourth elements as to each of Hall's claims against
Castillo.

> ### a.  Claim 1 – First Amendment Right to Petition

The basis of Claim 1 is that Hall attempted to
exercise her First Amendment right to petition the government
for redress by "filing a complaint of criminal activity against
Defendant Letoto" and by filing a report against Letoto, but she
was not permitted to do so. See id. at ¶¶ 169, 173. Hall
specifically alleges she "told Defendant Officer Koanui that she
wanted to file a police report against Defendant Letoto for
breaking and entering, for assault, and for false imprisonment,"
but he refused to take her report. [Id. at ¶¶ 60-61.] Hall also
alleges that, "[w]hen Plaintiff continued to request that

Defendant Officer Koanui file a report against Defendant Letoto, Officer Koanui told Plaintiff that she could file a report against Letoto if she wanted, but that Officer Koanui now had an open case to arrest her for theft." [Id. at ¶ 70.] Thus, Hall has adequately alleged the fourth element of her Section 1983 First Amendment claim – that there was a violation of her First Amendment right to petition the government for redress. See Entler v. Gregoire, 872 F.3d 1031, 1043 (9th Cir. 2017) ("Although we have not had occasion to opine on the foundational constitutional principle, we join our two sister circuits that have held that the filing of criminal complaints falls within the embrace of the First Amendment." (citations omitted)).

As to the second element, whether Castillo subjected Hall to that constitutional violation or caused her to be subjected to that constitutional violation, Hall alleges Castillo "separately infringed upon [her] First Amendment rights by not allowing her to file a report against Defendant Letoto." [Third Amended Complaint at ¶ 172.] Hall does not allege that she asked Castillo to file a report against Letoto or take her statement. However, Hall alleges Castillo was "present on the scene and observed Officer Koanui's interactions with Plaintiff, yet also did not take down, or offer to take down, a report from Plaintiff." [Id. at ¶ 62.] Thus, one of Hall's theories of liability as to Castillo is that he had the opportunity to

12

intercede when he saw Koanui violate her constitutional rights by refusing to take Hall's criminal complaint, but Castillo failed to intercede. See, e.g., id. at ¶ 190 (alleging Castillo "both separately caused, contributed to, and failed to intervene to prevent the continued unlawful arrest, detention, and/or imprisonment of Plaintiff"). The Ninth Circuit has stated that

> "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), aff'd in part, rev'd in part on other grounds, 518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996)). If an officer fails to intercede, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who" performed the offending action. Koon, 34 F.3d at 1447 n.25. For example, "an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." Id.; see also Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (holding that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" when another official acts unconstitutionally). "[H]owever, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham, 229 F.3d at 1289; see also Ramirez v. Butte-Silver Bow Cnty., 298 F.3d 1022, 1029–30 (9th Cir. 2002) (no violation of duty to intercede where there was no evidence that the defendant was aware of the constitutional violation as it occurred), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

Tobias v. Arteaga, 996 F.3d 571, 583-84 (9th Cir. 2021)

(alteration in Tobias).

Hall has sufficiently alleged the second element of

her Section 1983 First Amendment claim against Castillo in

Claim 1.

### b.   Claim 2 — First Amendment Retaliation Claim

The elements of a First Amendment retaliation claim

are:

> "(1) [the plaintiff] engaged in constitutionally
> protected activity; (2) as a result, [the
> plaintiff] was subjected to adverse action by the
> defendant that would chill a person of ordinary
> firmness from continuing to engage in the
> protected activity; and (3) there was a
> substantial causal relationship between the
> constitutionally protected activity and the
> adverse action."

Boquist v. Courtney, 32 F.4th 764, 775 (9th Cir. 2022) (quoting

Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010)).

Hall engaged in a constitutionally protected activity by

attempting to file a criminal complaint against Letoto. See

supra Discussion Section I.A.1.a.

As previously noted, Hall alleges Koanui told her that

she could file a report against Letoto, but he warned her that

she could be arrested for theft. See Third Amended Complaint at

¶ 70. Hall states she

> understood this comment as a threat that
> Defendant Officer Koanui would take her into the
> station if she persisted, and that he would

14

> arrest her again and take her to the police
> station in the future if she continued to try to
> exercise her First Amendment rights. As a result,
> Defendant Koanui's actions dissuaded and
> prevented Plaintiff from filing the report
> against Defendant Letoto, both on the scene that
> day and in the future.

[Id. at ¶ 71.] Koanui had already engaged in conduct that

constituted an arrest of Hall. See id. at ¶ 68. Hall has pled

sufficient factual allegations to support a reasonable inference

that "a person of ordinary firmness" would be deterred from

continuing to attempt to file a criminal complaint. See Boquist,

32 F.4th at 775; see also Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) ("To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." (citation and

internal quotation marks omitted)); id. ("A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." (citation

omitted)). Thus, Hall has adequately alleged the fourth element

of her First Amendment retaliation claim – that she was

retaliated against for attempting to exercise her First

Amendment right to petition the government for redress.

As to the second element, whether Castillo subjected

Hall to the retaliation or caused her to be subjected to the

retaliation, Hall alleges Castillo and Koanui "retaliat[ed]

15

against [her] by falsely arresting and imprisoning her." <u>See</u>
Third Amended Complaint at ¶ 38. Hall also describes her arrest
and imprisonment as follows:

> Defendant Officer Koanui also arrested Plaintiff.
> Specifically, in detaining and interrogating
> Plaintiff within the residence, Defendant Officer
> Koanui's statements and conduct restrained
> Plaintiff's liberty such that Plaintiff was not —
> and did not reasonably feel — free to leave.
> Confined to a small space in the home, Defendant
> Officer Koanui assumed an authoritative, open-
> legged stance, stood over Plaintiff while she sat
> on the couch, and questioned her in an
> intimidating, accusatory manner. In the meantime,
> Defendant Letoto's van continued to block the
> exit to her property, and Defendant Officer
> Castillo rotated in and out of the house, often
> standing outside on the porch, blocking
> Plaintiff's front door.

[<u>Id.</u> at ¶ 68.] The questioning of Hall constituted an arrest
because a reasonable person under the circumstances would
believe that she was not free to leave. <u>See</u> <u>United States v.</u>
<u>Butler</u>, 249 F.3d 1094, 1100-01 (9th Cir. 2001).

Hall also alleges Castillo "observed much of
[Koanui's] interactions with Plaintiff" and "wrote and filed a
false and misleading report against Plaintiff for theft," *i.e.*,
the charge that Koanui included in his report about the
incident. <u>See</u> Third Amended Complaint at ¶ 181. Hall further
alleges

> Officers Koanui, Castillo, and Maioho-Pohina and
> Letoto acted jointly with the specific common
> purpose of silencing Plaintiff. They did this by
> preventing her from filing a police report

16

> against Letoto, and instead opening a false and
> misleading police report against her, and using
> that police report to threaten further arrest if
> she persisted in trying to exercise her
> constitutional rights.

Id. at ¶ 206.

Reading the allegations of the Third Amended Complaint as a whole, Hall has sufficiently alleged the second element of her Section 1983 First Amendment retaliation claim against Castillo in Claim 2.

### c.    Claim 3 – Fourth Amendment Claim

A required element of a Section 1983 claim alleging false arrest and imprisonment in violation of the Fourth Amendment is that there was no probable cause for the plaintiff's arrest. See Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam).[6] Hall alleges Koanui filed his police report "without conducting a genuine investigation, and without any legitimate probable cause," and Koanui's arrest and imprisonment of Hall occurred in the process of writing the police report that lacked probable cause. [Third Amended Complaint at ¶¶ 66, 68.] This is a legal conclusion phrased as a factual allegation, and therefore this Court is not required to assume that it is true. See Iqbal, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take

---

[6] Cabrera was disapproved of on other grounds by Shalabi v. City of Fontana, 489 P.3d 714 (Cal. 2021).

all of the factual allegations in the complaint as true, we are
not bound to accept as true a legal conclusion couched as a
factual allegation." (citation and internal quotation marks
omitted)).

However, Hall has pled sufficient factual allegations
to allow this Court to reasonably infer that there was no
probable cause supporting her arrest. Hall alleges that: the
information that Koanui included in his report about the alleged
theft by Hall "came exclusively from Defendant Letoto," even
though Koanui was purportedly responding to Hall's 911 call
reporting conduct by Letoto; and Koanui failed to disclose his
connection with Letoto in his report. [Third Amended Complaint
at ¶ 66.] Hall also alleges:

> While Plaintiff was under arrest, Plaintiff
> explained to Defendant Officer Koanui that th[e
> theft] allegation was entirely false and that she
> had not been withholding the work phone. She then
> attempted to return the phone by giving it to
> Defendant Officer Koanui, but he refused to take
> it. Eventually another witness on the scene
> helped Plaintiff, who was too shaken up and
> injured to confront Defendant Letoto again, by
> taking the phone outside and giving it to Letoto.

[Id. at ¶ 69.] Thus, Hall has adequately alleged the fourth
element of this Section 1983 claim – that she was wrongfully
arrested and detailed, in violation of her Fourth Amendment
rights.

As to the second element, this Court has ruled that Hall has adequately alleged that Castillo subjected Hall to, or caused her to be subjected to, arrest. <u>See</u> *supra* Discussion Section I.A.1.b. This Court therefore concludes that Hall has adequately alleged the second element of her Section 1983 Fourth Amendment claim against Castillo in Claim 3.

### d.  <u>Claim 4 – Abuse of Process Claim</u>

In the 4/26/22 Order, this Court noted that is unclear whether an abuse of process claim can be asserted under Section 1983 and, if so, what the elements of such a claim are. 2022 WL 1229965, at *7. Some cases suggest that "egregious conduct that shocks the conscience is required," but other cases suggest that the elements of the Hawai`i law abuse of process claim, which does not require conscious shocking conduct, are sufficient. <u>See id.</u> (citing cases). In the 4/26/22 Order, this Court concluded that it was not necessary to decide which description of the elements of a Section 1983 abuse of process claim was correct because Hall failed to state a claim against Maioho-Pohina under either standard. <u>Id.</u> at *8.

Under Hawai`i law, the elements of an abuse of process claim are "'(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding.'" <u>Id.</u> at *7 (quoting <u>Young v. Allstate Ins. Co.</u>, 119 Hawai`i 403, 412, 198 P.3d 666, 675 (2008)). Hall does

19

allege Castillo had an ulterior purpose – to protect Letoto, Koanui's friend and business partner. See Third Amended Complaint at ¶ 54. The Hawai`i Supreme Court has noted that "'[p]rocess,' as used in the tort of 'abuse of process,' has been interpreted broadly to encompass the **entire range of 'procedures' incident to litigation**." Young, 119 Hawai`i at 412, 198 P.3d at 675 (ellipsis, citation, and some internal quotation marks omitted) (emphasis in Young). Further, the supreme court stated:

> The most recent edition of Professor Prosser's treatise on torts teaches that "**[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.**" *Prosser and Keeton on Torts* § 121, at 898 (5th ed., W. Page Keeton *et al.* eds., 1984) (emphases added) (footnotes omitted). Thus, more is required than the issuance of the process itself.

Id. at 414–15, 198 P.3d at 677–78 (brackets and emphasis in Young) (footnote and some citations omitted).

Arguably, submitting a police report about the officers' response to Hall's 911 call is an act that is within the scope of the usual law enforcement process. However, Hall alleges that Castillo did more than submitting a police report minimizing Letoto's conduct. Hall alleges Castillo intentionally prepared and submitted a police report that corroborated

20

Koanui's false report, which reflected that Hall committed theft. See, e.g., Third Amended Complaint at ¶ 63 (alleging the Officer Defendants "wr[ote] up false and misleading reports claiming that Plaintiff had stolen the phone that Defendant Letoto had given her for work purposes"). This is sufficient to allege conduct beyond the scope of the usual process.

To the extent that conscious-shocking conduct is required, this Court findings that, for purposes of a motion to dismiss, Hall's allegations are sufficient to allege conscious-shocking conduct by Castillo. See 4/26/22 Order, 2022 WL 1229965, at *7 ("Most federal courts to consider the issue have concluded that there is no constitutional violation for abuse of process under Section 1983 without conscience-shocking, egregious wrongdoing." (some citations omitted) (citing Martin A. Schwartz, Section 1983 Claims and Defenses, § 3.18 Malicious Prosecution; Abuse of Civil Process (4th ed. 2018 Supp.) (collecting cases); Brown v. Lever, 2018 WL 1903120, at *6 (D. Nev. Apr. 20, 2018) (dismissing abuse of process claim))).

Thus, regardless of whether conscious-shocking conduct is required or whether the Hawai`i law elements of an abuse of process claim are sufficient to state a Section 1983 abuse of process claim, Hall has adequately alleged that Castillo subjected her to, or caused her to be subjected to, an abuse of

process, in violation of her Fourteenth Amendment right to due
process.

### e.   Claim 5 – Equal Protection

In the 4/26/22 Order, this Court stated:

> The Equal Protection Clause of the
> Fourteenth Amendment requires that persons who
> are similarly situated be treated alike. See City
> of Cleburne v. Cleburne Living Ctr., 473 U.S.
> 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878,
> 891 (9th Cir. 2008). An equal protection claim
> may be established by showing that defendants
> intentionally discriminated against an individual
> based on his or her membership in a protected
> class. See Comm. Concerning Cmty. Improvement v.
> City of Modesto, 583 F.3d 690, 702–03 (9th Cir.
> 2009); Serrano v. Francis, 345 F.3d 1071, 1082
> (9th Cir. 2003) . . . .
>
> An equal protection claim can also be stated
> by a showing that defendants intentionally
> treated similarly situated individuals
> differently without a rational relationship to a
> legitimate state purpose. See Engquist v. Or.
> Dep't of Agric., 553 U.S. 591, 601–02 (2008);
> Village of Willowbrook v. Olech, 528 U.S. 562,
> 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546
> F.3d 580, 592 (9th Cir. 2008).

2022 WL 1229965, at *8 (alteration in 4/26/22 Order) (some
citations omitted).

In the Third Amended Complaint, Hall alleges Koanui
violated her rights under the equal protection clause by:
"fil[ing] a false and misleading report and unlawfully
interrogat[ing] and arrest[ing] Plaintiff without probable
cause"; [Third Amended Complaint at ¶ 199;] and failing to file
a report against Letoto, the suspect in Hall's report of assault

and breaking and entering, [id at ¶ 200]. Hall alleges there was no rational basis for the differential treatment of Hall and Letoto, and that Hall was discriminated against because she attempted to exercise her First Amendment right to petition the government for redress. [Id. at ¶¶ 201-03.] Hall alleges Castillo assisted Koanui in the conduct that violated her constitutional rights. [Id. at ¶ 199.] As previously noted, Hall has alleged that: Castillo filed a false police report corroborating Koanui's account of the incident between Hall and Letoto; Castillo participated in the arrest of Hall; and Castillo had the opportunity to intervene when he observed Koanui refuse to allow Hall to make a criminal complaint, but Castillo failed to do so. Therefore, for purposes of the instant Motion, this Court concludes that Hall has adequately alleged that Castillo subjected her to, or caused her to be subjected to, a violation of her rights under the Equal Protection Clause of the Fourteenth Amendment.

### f.   Claim 6 – Conspiracy

In the context of a motion for summary judgment, the Ninth Circuit has stated:

> To establish liability for a conspiracy in a § 1983 case, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted). "Such an agreement need

23

> not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." <u>Id.</u> "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc).

<u>Crowe v. Cnty. of San Diego</u>, 608 F.3d 406, 440 (9th Cir. 2010).

Hall alleges Koanui informed Castillo of his connection with Letoto, and Koanui and Castillo agreed that they would work together to protect Letoto at Hall's expense. [Third Amended Complaint at ¶ 54.] Further, Castillo was present when Koanui conveyed similar information to Maioho-Pohina, and the three Officer Defendants agreed to work together to protect Letoto at Hall's expense. [<u>Id.</u> at ¶ 74.] Hall also alleges Castillo acted upon this agreement by preparing and submitting a false and/or misleading police report to protect Letoto at Hall's expense. [<u>Id.</u> at ¶ 67.] As previously noted, Castillo participated in the arrest of Hall, and he chose not to intercede when he observed Koanui refuse to allow Hall to make a criminal complaint against Letoto. Therefore, for purposes of the instant Motion, this Court concludes that Hall has adequately alleged that Castillo conspired to deprive her of her constitutional rights.

2.   **Maioho-Pohina**

Similar to her allegations against Castillo, Hall
alleges that, at all relevant times, Maioho-Pohina was employed
by HPD as a police officer, and Hall's allegations regarding
Castillo describe conduct in the course of the performance of
his duties. See Third Amended Complaint at ¶ 18; see also id. at
¶¶ 72-77. Thus, Hall has alleged sufficient facts as to the
first element of her Section 1983 claims against Maioho-Pohina.
As previously noted, Hall has alleged sufficient facts as to the
third element of her Section 1983 claims. This Court will
address the second and fourth elements as to each of Hall's
claims against Maioho-Pohina.

The Ninth Circuit Memorandum set forth the applicable
standard to determine whether Hall has adequately alleged that
Maioho-Pohina, in her capacity as Koanui and Castillo's
supervisor, violated Hall's Fourteenth Amendment rights.

> Under § 1983, to establish supervisory liability
> for equal protection violations that are premised
> on the suppression of First Amendment protected
> activity, the plaintiff must allege that the
> supervisor (1) knew of the constitutional
> violation and (2) acquiesced to that violation.
> OSU Student Alliance v. Ray, 699 F.3d 1053, 1075
> (9th Cir. 2012). Acquiescence requires "a
> sufficient causal connection between the
> supervisor's wrongful conduct and the
> constitutional violation." Starr v. Baca, 652
> F.3d 1202, 1207 (9th Cir. 2011) (internal
> quotations and alterations omitted). This causal
> connection can be established by the supervisor's
> initiating the violation or by his "knowingly

refusing" to end ongoing actions that are
reasonably likely to cause a constitutional
violation. Id. at 1207-08 (cleaned up). Thus, our
caselaw regarding acquiescence has focused on
future or ongoing harms that occur due to a
supervisor's inaction but has never established
that supervisory liability can be premised on a
supervisor's "acquiescing" to past, completed
constitutional wrongs by inaction. See OSU, 699
F.3d at 1072 (quoting Preschooler II v. Clark
Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th
Cir. 2007), for the proposition that a supervisor
is liable when he knowingly "fail[s] to act to
**prevent**" constitutional violations from happening
(emphasis added)). It does seem difficult to
prevent what has already happened.

Ninth Circuit Memorandum, 2023 WL 3220909, at *2 (alteration and

emphasis in Ninth Circuit Memorandum). The same analysis also

applies to Hall's other Section 1983 claims against Maioho-

Pohina.

### a.   Claim 1 – First Amendment Right to Petition

The Ninth Circuit held that the Second Amended

Complaint's only alleged violations of Hall's First Amendment

right to petition the government for redress occurred before

Maioho-Pohina arrived on the scene, and the Second Amended

Complaint attempted to hold Maioho-Pohina liable for inaction

after the alleged constitutional violation. Id. As to the Second

Amended Complaint's allegation that Maioho-Pohina failed to take

Hall's police report, the Ninth Circuit noted that "Hall did not

allege that she had asked Maioho-Pohina to ensure that a police

report detailing Hall's side of the story was filed, even though

the other officers failed to do so, or that Hall had even asked
Maioho-Pohina to take down her statement." Id. at *3.

First, as to Hall's theory that Maioho-Pohina violated
her constitutional rights because Maioho-Pohina herself failed
to record Hall's statements in a police report, Hall adds the
allegation that, when Hall spoke to Maioho-Pohina, Hall
"explained the multiple ways in which Officer Koanui had
committed misconduct against her." [Id. at ¶ 75.] However, Hall
still does not allege that she asked Maioho-Pohina to ensure
that the police report reflected Hall's side of the story or
that Hall asked Maioho-Pohina to take Hall's statement. See
Ninth Circuit Memorandum, 2023 WL 3220909, at *3; compare Third
Amended Complaint at ¶ 60 ("Plaintiff told Defendant Officer
Koanui that she wanted to file a police report against Defendant
Letoto for breaking and entering, for assault, and for false
imprisonment."). Thus, to the extent that Hall's Section 1983
claims against Maioho-Pohina are based upon the allegation that
Maioho-Pohina failed to take Hall's statement or write a police
report reflecting Hall's account of the incident, those portions
of Hall's Section 1983 claims fail to state a plausible claim
for relief.

As to the portions of Hall's Section 1983 claims based
upon supervisory liability, Hall has added the allegation that,
when Maioho-Pohina arrived at the scene, Maioho-Pohina spoke

privately with Koanui and Castillo and, during that
conversation, Koanui told Maioho-Pohina about his connection
with Letoto, and "Maioho-Pohina agreed with Koanui and Castillo
to work together to protect Letoto (at the expense of
Plaintiff)." [Third Amended Complaint at ¶¶ 73-74.] Further,
Hall alleges Maioho-Pohina wrote a false and/or misleading
police report that "corroborat[ed] Officer Koanui's account of
the incident, furthering their mutually agreed-upon goal to
protect Letoto at the expense of Plaintiff." [Id. at ¶ 77.]
These are factual allegations that must be assumed to be true
for purposes of the instant Motion. See Iqbal, 556 U.S. at 678
("for the purposes of a motion to dismiss we must take all of
the factual allegations in the complaint as true" (citation
omitted)). So construed, Hall's Third Amended Complaint
sufficiently alleges that Maioho-Pohina was aware of and
acquiesced to Koanui's constitutional violation. See Ninth
Circuit Memorandum, 2023 WL 3220909, at *2.

        However, according to Hall's allegations, Koanui's
refusals to allow Hall to make a criminal complaint against
Letoto and Castillo's refusal to intercede occurred before
Maioho-Pohina arrived on the scene. See Third Amended Complaint
at ¶ 72 ("Confused why she was being threatened with arrest
after calling the police as a victim of a crime, Plaintiff
dialed 911 a second time after speaking with Defendant Officer

Koanui and requested further help. As a result, Defendant HPD
Sergeant Debra Maioho-Pohina arrived while Defendants Officer
Koanui and Officer Castillo were still on the scene."). Even
though Maioho-Pohina allegedly acquiesced in the violation of
Hall's constitutional rights, she could not prevent
constitutional violations that already happened. See Ninth
Circuit Memorandum, 2023 WL 3220909, at *2. The Third Amended
Complaint does not include any allegations that Hall's First
Amendment right to petition the government for redress was
violated after Maioho-Pohina agreed with Koanui and Castillo to
protect Letoto at Hall's expense.

Therefore, to the extent that Hall's Section 1983
First Amendment claim against Maioho-Pohina is based upon
supervisory liability, that portion the claim fails to state a
plausible claim for relief. Because Claim 1 does not adequately
allege a constitutional violation by Maioho-Pohina, Maioho-
Pohina is entitled to qualified immunity. See Ninth Circuit
Memorandum, 2023 WL 3220909, at *3. Hall's claims against
Maioho-Pohina in Claim 1 are therefore dismissed.

Although only the equal protection claim was at issue
in Hall's interlocutory appeal, the Ninth Circuit's analysis
gave Hall notice of what was required to plead an adequate
Section 1983 First Amendment claim against Maioho-Pohina. In
spite of this notice, Hall was unable to plead sufficient

factual allegations regarding Maioho-Pohina to support Claim 1. This Court therefore concludes that it is clear that Hall could not save her First Amendment claim against Maioho-Pohina after further amendment. The dismissal is therefore with prejudice. See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation and quotation marks omitted))).

### b.   Claim 2 – First Amendment Retaliation Claim

To the extent that Claim 2 is based upon the arrest of Hall in her residence, this also occurred before Maioho-Pohina arrived on the scene, and for the same reasons set forth as to Claim 1, Maioho-Pohina cannot be liable as a supervisor for that portion of Claim 2. Because that portion of Claim 2 does not adequately allege a constitutional violation by Maioho-Pohina, Maioho-Pohina is entitled to qualified immunity, and that portion of Claim must be dismissed. For the same reasons stated as to Claim 1, this Court concludes that it is clear that Hall could not save the portion of her First Amendment retaliation claim against Maioho-Pohina that is based on the arrest of Hall in her residence on June 10, 2019. The dismissal of this portion of Claim 2 is therefore with prejudice.

However, Claim 2 also alleges Hall was threatened with future arrest "if she persisted in trying to report Defendant Letoto's crimes to the police." [Third Amended Complaint at ¶ 180.] After Maioho-Pohina agreed with Koanui and Castillo to protect Letoto at Hall's expense, Maioho-Pohina prepared and submitted a false and/or misleading police report corroborating Koanui's report accusing Hall of theft. See id. at ¶ 182. Hall believed the false theft reports could be used against her in the future as the basis for a criminal investigation and/or arrest. See, e.g., id. at ¶ 7 ("for the several years since the incident occurred, the knowledge that a criminal theft investigation against her is pending has loomed over Plaintiff"). At the time she wrote the allegedly false and/or misleading report, Maioho-Pohina knew of the violation of Hall's constitutional rights and acquiesced in that violation by agreeing to work with Koanui and Castillo to protect Letoto. See Ninth Circuit Memorandum, 2023 WL 3220909, at *2. Although Koanui's threat to Hall of future arrest occurred before Maioho-Pohina arrived at the scene, see Third Amended Complaint at ¶¶ 70-72, that threat of future arrest or investigation continued after Maioho-Pohina agreed to help protect Letoto, and Maioho-Pohina contributed to that threat by submitting an allegedly false and/or misleading police report that corroborated Koanui's report, which alleged Hall committed

31

theft. Hall has sufficiently pled allegations that Maioho-Pohina subjected Hall to, or caused Hall to be subjected to, First Amendment retaliation through the threat of a future theft investigation and/or arrest.

### c.    Claim 3 – Fourth Amendment Claim

Hall's arrest on June 10, 2019 occurred before Maioho-Pohina arrived on the scene, and Hall's claim against Maioho-Pohina in Claim 3 is based solely on supervisory liability. For the reasons set forth in the Ninth Circuit Memorandum, Hall fails to state a plausible Section 1983 Fourth Amendment claim against Maioho-Pohina. Because Claim 3 fails to plead a constitutional violation by Maioho-Pohina, she is entitled to qualified immunity as to Claim 3. See Ninth Circuit Memorandum, 2023 WL 3220909, at *2-3. Hall's claim against Maioho-Pohina in Claim 3 is therefore dismissed, and the dismissal is with prejudice because this Court concludes it is clear that Hall cannot cure the defect in this claim by amendment.

### d.    Claim 4 – Abuse of Process Claim

Similar to her allegations regarding Castillo, Hall alleges Maioho-Pohina prepared and filed a false and/or misleading police report that corroborated Koanui's report, which alleged Hall committed theft. See, e.g., Third Amended Complaint at ¶ 67. For the same reasons set forth as to Castillo, Hall has adequately alleged that Maioho-Pohina

subjected her to, or caused her to be subjected to, an abuse of process, in violation of her Fourteenth Amendment right to due process. See *supra* Discussion Section I.A.1.d.

### e.   Claim 5 – Equal Protection

Claim 5 is based upon the Officer Defendants' "fil[ing of] a false and misleading report and unlawful[] interrogat[ion] and arrest[ of] Plaintiff without probable cause." [Third Amended Complaint at ¶ 199.] Hall alleges the Officer Defendants provided police protection to Letoto by preparing a police report regarding his allegation that Hall committed theft, but failed to provide police protection to Hall. See id. at ¶ 202. As previously noted, Maioho-Pohina was not present when Hall was interrogated and effectively arrested, and therefore she did not have the opportunity to prevent that alleged constitutional violation. Therefore, the portion of Claim 5 based upon Hall's interrogation/arrest fails to state an equal protection claim against Maioho-Pohina.

The portion of Claim 5 based on the failure to take Hall's criminal complaint or statement fails for the same reasons noted in the Ninth Circuit Memorandum – Hall does not plead sufficient factual allegations "that could tie Maioho-Pohina to the purportedly unconstitutional conduct." See Ninth Circuit Memorandum, 2023 WL 3220909, at *3. The factual allegations that Hall added in the Third Amended Complaint do

33

not cure this defect that the Ninth Circuit held existed in the equal protection claim of the Second Amended Complaint.

Claim 5 of the Third Amended Complaint fails to state a plausible equal protection claim against Maioho-Pohina. Because Claim 5 fails to plead a constitutional violation by Maioho-Pohina, she is entitled to qualified immunity as to Claim 3. See Ninth Circuit Memorandum, 2023 WL 3220909, at *2-3. Hall's claims against Maioho-Pohina in Claim 5 are therefore dismissed, and the dismissal is with prejudice because this Court concludes it is clear that Hall cannot cure the defect in this claim by amendment.

### f.   Claim 6 – Conspiracy

Similar to Castillo, Hall alleges Koanui informed Maioho-Pohina of his connection with Letoto, and Maioho-Pohina agreed with Koanui and Castillo to work together to protect Letoto at Hall's expense. [Third Amended Complaint at ¶ 74.] Hall also alleges Maioho-Pohina acted upon this agreement by preparing and submitting a false and/or misleading police report to protect Letoto at Hall's expense. [Id. at ¶ 77.] As previously noted, the false and/or misleading police reports by the Officer Defendants were used to dissuade Hall from attempting to report Letoto's alleged crimes. At the time she wrote the allegedly false and/or misleading report, Maioho-Pohina knew of the violation of Hall's constitutional rights and

34

acquiesced in that violation by agreeing to work with Koanui and Castillo to protect Letoto. <u>See</u> Ninth Circuit Memorandum, 2023 WL 3220909, at *2. Maioho-Pohina's false and/or misleading report contributed to the threat of future criminal investigation and/or arrest of Hall, if she attempted to make a future report about Letoto's alleged crimes during the June 10, 2019 incident. Therefore, for purposes of the instant Motion, this Court concludes that Hall has adequately alleged that Maioho-Pohina conspired to deprive her of her constitutional rights.

      **B.**    **<u>Clearly Established</u>**

>     Law enforcement officials are entitled to qualified immunity even where their conduct violated a constitutional right unless that right was clearly established at the time of the violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The dispositive inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> Thus, our "task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." <u>Flores [v. Morgan Hill Unified Sch. Dist.]</u>, 324 F.3d [1130,] 1136-37 [(9th Cir. 2003)] (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

<u>Elliot-Park v. Manglona</u>, 592 F.3d 1003, 1008 (9th Cir. 2010).

    Based on the case law cited in the discussion of Hall's Section 1983 First Amendment claim and First Amendment retaliation claim against Castillo, <u>see</u> *supra* Discussion

Sections I.A.1.a, b, this Court concludes that the First Amendment right to petition the government for redress of grievances by filing a criminal complaint and the right to be free from retaliation for the exercise of the right to petition the government were clearly established rights at the time of the June 10, 2019 incident at issue in this case. Because this Court has also concluded that Hall adequately alleged a constitutional violation against Castillo in Claim 1 and Claim 2 and against Maioho-Pohina in the portion of Claim 2 based upon the threat of future criminal investigation and/or arrest, Hall has pled sufficient allegations to overcome the City Defendants' assertion of qualified immunity as to those claims. The City Defendants' Motion is denied as to those claims. The denial is without prejudice to the City Defendants revisiting the issue of qualified immunity on summary judgment or at trial, if warranted by the record at that time.

Based on the case law cited in the discussion of Hall's Section 1983 Fourth Amendment claim against Castillo, see supra Discussion Sections I.A.1.c, this Court concludes that the Fourth Amendment right to be free from wrongful arrest or imprisonment was clearly established at the time of the incident. Because this Court has also concluded that Hall adequately alleged a constitutional violation against Castillo in Claim 3, Hall has pled sufficient allegations to overcome

36

Castillo's assertion of qualified immunity as to Claim 3. The City Defendants' Motion is denied as to Hall's claim against Castillo in Claim 3. The denial is without prejudice to Castillo revisiting the issue of qualified immunity on summary judgment or at trial, if warranted by the record at that time.

As noted in the discussion of Hall's abuse of process claim against Castillo, it is unclear whether an abuse of process claim is cognizable under Section 1983 and, if so, what the elements of the claim are. See *supra* Discussion Section I.A.1.d. In light of the uncertainty regarding Section 1983 abuse of process claims, this Court cannot conclude that the constitutional rights at issue in Claim 4 of Hall's Third Amended Complaint were so clearly established that a reasonable police officer in Castillo's or Maioho-Pohina's position would have known that his or her conduct constituted an abuse of process. Castillo and Maioho-Pohina are therefore entitled to qualified immunity as to Claim 4. Hall's claims against the City Defendants in Claim 4 are dismissed, and the dismissal is with prejudice because this Court concludes it is clear that Hall cannot cure the defect in this claim by amendment.

As to Hall's equal protection claim against Castillo, the right to non-discriminatory treatment by law enforcement when reporting a crime is well established. See Elliot-Park, 592

F.3d at 1008 ("The right to non-discriminatory administration of protective services is clearly established."). Because this Court has also concluded that Hall adequately alleged a constitutional violation against Castillo in Claim 5, Hall has pled sufficient allegations to overcome Castillo's assertion of qualified immunity as to Claim 5. The City Defendants' Motion is denied as to Hall's claim against Castillo in Claim 5. The denial is without prejudice to Castillo revisiting the issue of qualified immunity on summary judgment or at trial, if warranted by the record at that time.

Based on the case law cited in the discussion of Hall's Section 1983 conspiracy claim against Castillo, see *supra* Discussion Sections I.A.1.f, this Court concludes that the right to be free from conspiracies to violate a person's constitutional rights was clearly established at the time of the June 10, 2019 incident at issue in this case. Because this Court has also concluded that Hall adequately alleged a constitutional violation against the City Defendants in Claim 6, Hall has pled sufficient allegations to overcome the City Defendants' assertion of qualified immunity as to Claim 6. The City Defendants' Motion is denied as to Claim 6. The denial is without prejudice to the City Defendants revisiting the issue of qualified immunity on summary judgment or at trial, if warranted by the record at that time.

## II.  <u>Qualified/Conditional Privilege</u>

As to Hall's state law claims, the City Defendants first argue the claims against them must be dismissed because they have a qualified or conditional privilege.

Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. <u>Towse v. State of Hawaii</u>, 647 P.2d 696, 702 (Haw. 1982); <u>Runnels v. Okamoto</u>, 525 P.2d 1125, 1128 (Haw. 1974). This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself. <u>Towse</u>, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests. It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard. <u>See</u> <u>Medeiros v. Kondo</u>, 522 P.2d 1269, 1272 (Haw. 1974).

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. <u>Towse</u>, 647 P.2d at 702-03; <u>Medeiros</u>, 522 P.2d at 1272. When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant. <u>Marshall v. Univ. of Haw.</u>, 821 P.2d 937, 946 (Haw. Ct. App. 1991), *abrogated on other grounds by* <u>Hac v. Univ. of Haw.</u>, 73 P.3d 46 (Haw. 2003).

The existence or absence of malice is generally a question for the jury. <u>Runnels</u>, 525 P.2d at 1129. However, when the existence or absence of malice is demonstrated to the court via uncontroverted

> > affidavits or depositions, the court may
> > rule on the existence or absence of malice
> > as a matter of law. <u>See</u> <u>id.</u>
>
> > <u>Edenfield v. Estate of Willets</u>, Civ. No. 05-00418 SOM-
> > BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14,
> > 2006) (parallel citations omitted).

<u>Begley v. Cnty. of Kauai</u>, CIVIL 16-00350 LEK-KJM, 2018 WL 3638083, at *6 (D. Hawai`i July 31, 2018) (some citations omitted). "Except in claims for defamation, an actual malice standard applies as to all tort claims." <u>Id.</u> (citation and internal quotation marks omitted). The qualified or conditional privilege under Hawai`i law will be referred to in this Order as the "conditional privilege."[7]

Hall alleges the City Defendants acted knowingly and maliciously when they prepared and submitted their false and/or misleading police reports that corroborated Koanui's account of the June 10, 2019 incident. <u>See</u> Third Amended Complaint at ¶ 67; <u>see also</u> <u>id.</u> at ¶ 77 (similar allegation regarding Maioho-Pohina). Hall also alleges in Claim 1 that "Defendants acted knowingly, willfully, with malicious intent, and in reckless disregard for Plaintiff's constitutional rights." Third Amended Complaint at ¶ 176; <u>see also</u> <u>id.</u> at ¶¶ 187, 192 (alleging the

---

[7] The qualified or conditional privilege is sometimes referred to as "qualified immunity." <u>See, e.g.</u>, <u>Slingluff v. Hawai`i</u>, 131 Hawai`i 239, 244, 317 P.3d 683, 688 (Ct. App. 2013). Because this order also discusses qualified immunity under federal law, the term "conditional privilege" is used in this Order to distinguish between the two.

same in Claims 2, 3, respectively); id. at ¶ 239 (similar
allegation in Claim 10). Further, in Claim 4, she alleges
Defendants "maliciously and deliberately misused and abused
their authority to initiate and maintain a criminal
investigation and/or proceeding to intimidate, threaten, and
dissuade Plaintiff from pursuing legitimate claims against
Defendant Letoto." [Third Amended Complaint at ¶ 195.]

        Hall has pled that the City Defendants acted with
malice, and she has pled sufficient factual allegations to allow
this Court to reasonably infer that the City Defendants acted
with malice. Thus, the Third Amended Complaint contains
sufficient factual allegations to overcome the City Defendants'
assertion of the conditional privilege as to Hall's state law
claims. To the extent that the Motion seeks dismissal based on
the conditional privilege, the Motion is denied. The denial is
without prejudice to the City Defendants revisiting the issue of
conditional privilege on summary judgment or at trial, if
warranted by the record at that time.

III. **Other Arguments Regarding the State Law Claims**

   A.   **Claim 10 - IIED**

        The Hawai`i Supreme Court has stated:

        [T]he tort of IIED consists of four elements:
        "1) that the act allegedly causing the harm was
        intentional or reckless, 2) that the act was
        outrageous, and 3) that the act caused 4) extreme
        emotional distress to another." Hac [v. Univ. of

41

Hawai`i], 102 Hawai`i [102,] 106-07, 73 P.3d
[46,] 60-61 [(2003)]. "The term 'outrageous' has
been construed to mean without just cause or
excuse and beyond all bounds of decency." Enoka
v. AIG Hawai`i Ins. Co., Inc., 109 Hawai`i 537,
559 128 P.3d 850, 872 (2006) (citations and some
internal quotation marks omitted). "The question
whether the actions of the alleged tortfeasor are
unreasonable or outrageous is for the court in
the first instance, although where reasonable
people may differ on that question it should be
left to the jury." Takaki v. Allied Machinery
Corp., 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App.
1998) (quotations and quotation marks omitted).

Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666,

692 (2008) (footnote omitted). As to the fourth element of the

claim, the supreme court stated:

"extreme emotional distress" constitutes, among
other things, mental suffering, mental anguish,
nervous shock, and other "highly unpleasant
mental reactions." Enoka v. AIG Hawai`i Ins. Co.,
Inc., 109 Hawai`i 537, 559, 128 P.3d 850, 872
(2006) (citations and some internal quotation
marks omitted). "[M]ental distress may be found
where a reasonable [person], normally
constituted, would be unable to adequately cope
with the mental stress engendered by the
circumstances of the case." Shoppe v. Gucci Am.,
Inc., 94 Hawai`i 368, 387, 14 P.3d 1049, 1068
(2000) (quoting Rodrigues v. State, 52 Haw. 156,
173, 472 P.2d 509, 520 (1970)).

Id. at 429 n.26, 198 P.3d at 692 n.26 (alterations in Young).

The City Defendants argue Hall's IIED claim should be

dismissed because she has not adequately alleged outrageous

conduct, nor has shall alleged that a reasonable person in her

position would have been unable to cope with their conduct.

[Motion, Mem. in Supp. at 24-25.] According to the factual

allegations in the Third Amended Complaint, Hall called 911 to report that Letoto had assaulted her at her home and was attempting to force his way into the house, but the police officers who responded to the call, Koanui and Castillo, did not help her and treated her as the suspect. Although Koanui told Hall she could file a criminal complaint against Letoto, Koanui warned her that he had an open case against her for theft and could arrest her. After Hall spoke to Koanui, she called 911 again, and Maioho-Pohina arrived at the scene in response to that call. The three Officer Defendants agreed to protect Letoto, at Hall's expense, because of Koanui's personal and business relationship with Koanui. In furtherance of this agreement, Castillo and Maioho-Pohina filed false and/or misleading police reports that corroborated Koanui's report, which alleged Hall committed theft. This Court finds that reasonable people could differ as to the question of whether such conduct constitutes outrageous conduct for purposes of an IIED claim. See Young, 119 Hawaiʻi at 429, 198 P.3d at 692. Therefore, Hall has sufficiently pled outrageous conduct by the City Defendants.

>Hall alleges
>
>the psychological harms caused by Officers Koanui, Castillo, and Maioho-Pohina — the very people whom Ms. Hall believed would protect her and her family from Mr. Letoto's assault — also continue to haunt and traumatize her to this day.

> And for the several years since the incident
> occurred, the knowledge that a criminal theft
> investigation against her is pending has loomed
> over Plaintiff, causing serious psychological
> distress, and also causing her to refrain from
> applying to desired job opportunities with the
> government, which require thorough criminal
> background checks.

[Third Amended Complaint at ¶ 7.] She also alleges that, "[a]s a

direct and proximate result of . . . Defendant HPD officers'

conduct, Plaintiff has suffered intense stress, physical pain,

mental anguish, anxiety, fear, helplessness, embarrassment,

anger, and severe emotional distress." [Id. at ¶ 160.] For

purposes of the instant Motion, this Court accepts Hall's

allegations about the harms she suffered as true. The harms she

describes constitute extreme emotional distress and, based on

the circumstances alleged in Third Amended Complaint, "a

reasonable person, normally constituted, would be unable to

adequately cope with the mental stress" caused by those

circumstances. See Young, 119 Hawai`i at 429 n.26, 198 P.3d at

692 n.26 (brackets, quotation marks and citation omitted). This

Court therefore concludes that Claim 10 of the Third Amended

Complaint alleges a plausible IIED claim against the City

Defendants. The Motion is therefore denied as to Claim 10.

**B.    Claim 11 – Civil Conspiracy**

> Federal District Courts in the District of
> Hawaii have interpreted Hawaii case law on civil
> conspiracy as requiring a plaintiff to allege
> three elements:

(1)   the formation of a conspiracy;

(2)   wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and

(3)   damage.

Pro Flexx LLC v. Yoshida, Civ No. 20-00512 SOM-KJM, 2021 WL 297126, at *9 (D. Haw. Jan. 28, 2021) (noting that a civil conspiracy claim is not necessarily restricted to circumstances involving deceit or fraud).

A plaintiff is not required to allege a formal agreement between the parties in order to show the formation of a conspiracy. Stanton [v. Bank of Am., N.A., Civ. No. 09-00404 DAE-LEK], 2010 WL 4176375, at *18 [(D. Haw. Oct. 19, 2010)]. It is sufficient for a plaintiff to allege facts showing a "concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Id. (quoting Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937)).

A civil conspiracy is not an independent cause of action in itself. Weinberg v. Mauch, 890 P.2d 277, 286 (1995). It is not enough for a plaintiff to allege that defendants understandingly engaged in concerted misconduct to accomplish a common purpose. The wrongful conduct in furtherance of a civil conspiracy must be based on an underlying actionable claim. Id.

David Sansone Co. v. Waiaha Ridge LLC, Civ. No. 20-00411 HG-RT, 2022 WL 1212922, at *5-6 (D. Hawai`i Apr. 25, 2022).

The City Defendants allege Claim 11 is insufficiently pled because Hall does not allege the criminal or unlawful purpose and means of the conspiracy. [Motion, Mem. in Supp. at 25.] Hall alleges Koanui and Castillo "agreed to work together

45

to protect Letoto at the expense of Plaintiff," [Third Amended Complaint at ¶ 54,] and Maioho-Pohina later "agreed with Koanui and Castillo to work together to protect Letoto (at the expense of Plaintiff)," [id. at ¶ 74]. Hall alleges Castillo and Maioho-Pohina furthered "their mutually agreed-upon goal to protect Letoto at the expense of Plaintiff" by "provid[ing] false, inaccurate, and/or misleading and incomplete information on their official reports . . . by corroborating Defendant Officer Koanui's account of the incident." [Id. at ¶ 67.] Hall's factual allegations are sufficient to allege that a conspiracy was formed and the wrongful conduct in furtherance of the conspiracy. See David Sansone Co., 2022 WL 1212922, at *5.

        The City Defendants also argue "the conspiracy claims fails because all of the other state law claims fail." [Motion, Mem. in Supp. at 25.] This Court rejects that argument because Hall's IIED claim and some of her Section 1983 claims remain against the City Defendants.

        Claim 11 states a plausible civil conspiracy claim against the City Defendants. The Motion is therefore denied as to Claim 11.

**CONCLUSION**

        For the foregoing reasons, the City Defendants' Motion to Dismiss Third Amended Complaint, filed July 3, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically, the

46

Motion is GRANTED insofar as the following claims are dismissed

with prejudice:

-Hall's claims against the City Defendants in Claim 4;

-Hall's claims against Maioho-Pohina in Claims 1, 3, and 5; and

-the portion of Claim 2 alleging a First Amendment retaliation
    claim against Maioho-Pohina based upon the arrest of Hall
    in Hall's residence on June 10, 2019.

The Motion is DENIED as to the following claims:

-Hall's claims against the City Defendants in Claims 6, 10, and
    11;

-Hall's claims against Castillo in Claims 1, 2, 3, and 5; and

-the portion of Claim 2 alleging a First Amendment retaliation
    claim against Maioho-Pohina based upon the threat of future
    criminal investigation and/or arrest.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, March 29, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ROBIN HALL VS. CITY AND COUNTY OF HONOLULU, ET AL; CV 21-00248
LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS DEBRA
MAIOHO-POHINA AND JOHN LEO CASTILLO'S MOTION TO DISMISS THIRD
AMENDED COMPLAINT**