ACLU OF HAWAII FOUNDATION

JONGWOOK "WOOKIE" KIM  #11020
EMILY M. HILLS  #11208
P.O. Box 3410
Honolulu, Hawaii 96801
Telephone: (808) 522-5905
E-mail: wkim@acluhawaii.org
ehills@acluhawaii.org

Attorneys for Plaintiff
ROBIN HALL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| ROBIN HALL, | CASE NO. CV 21-00248 LEK-KJM |
|---|---|
| Plaintiff, | [CIVIL RIGHTS ACTION] |
| vs. | **PLAINTIFF'S CONCISE STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANT CHRISTOPHER KOANUI'S MOTION FOR SUMMARY JUDGMENT; EXHIBITS 1-8; CERTIFICATE OF SERVICE**[1] |
| CITY AND COUNTY OF HONOLULU; CHRISTOPHER KOANUI; LEONARD LETOTO; DEBRA MAIOHO-POHINA; JOHN LEO CASTILLO | |
| Defendants. | Hearing: January 24, 2025, 10:30am
Judge: Honorable Leslie E. Kobayashi
Trial: April 21, 2025
Related: Dkt. 231 |

---

[1] This concise statement regarding Plaintiff's opposition to Koanui's motion for summary judgment is cited as "PCSOF2." "PCSOF" refers to the concise statement regarding Plaintiff's partial summary judgment motion against Koanui (Dkt. 233). "PCSOF3" refers to the concise statement regarding Plaintiff's opposition to Castillo/Maioho-Pohina's summary judgment motion.

# PLAINTIFF'S CONCISE STATEMENT OF FACTS SUPPORTING OPPOSITION TO DEFENDANT CHRISTOPHER KOANUI'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Rules of Practice for the United States District Court for the District of Hawai'i, Plaintiff ROBIN HALL ("Plaintiff"), by and through her undersigned attorneys, hereby submits her separate concise statement of facts supporting her opposition to Defendant Christopher Koanui's motion for summary judgment (Dkt. 230).

DATED: Honolulu, Hawai'i, January 3, 2025.

                                            /s/ Jongwook "Wookie" Kim
                                         JONGWOOK "WOOKIE" KIM
                                         EMILY M. HILLS
                                         ACLU of Hawai'i Foundation

                                         Attorneys for Plaintiff
                                         ROBIN HALL

### Plaintiff's Response to Koanui's Concise Statement of Facts (Dkt. 231)

| | |
|---|---|
| **1.** Admitted except as to "in part" because EO was wholly owned by Koanui and Letoto 50/50. Object to reliance on Third Amended Complaint.[2] | PCSOF¶¶3-4 |
| **2, 8, 9, 10, 11, 18, 19, 20, 21, 22, 29.** Admitted. | |
| **3.** Admitted as to the asserted fact, but disputed as to the assertion under "evidentiary support" that "Hall's claim that they agreed to exchange cash is disputed." The supporting citation from Letoto's deposition transcript does not dispute that he and Hall had formed an *agreement* that he would pay her in cash *before* he arrived at her home. | Hall 2nd Decl.¶¶8-13; Hall Dep. (Dkt. 233-2) 126:5-127:8 |
| **4.** Disputed because (1) Hall returned the phone before she cashed the check, (2) Letoto did not ask Hall for the phone at the door, and (3) Hall and Letoto had agreed they would go to the bank together to cash the check first. | Hall Dep. (**Ex. 1**) 174:1-176:4; Hall 2nd Decl.¶¶8-16; Koanui BWC (Dkt. 233-19) at 21:00-24:12; PCSOF2¶72 |
| **5.** Admitted that Letoto stuck his foot in the doorway, that he pushed the door into Hall, and that he struck Hall in the hip. Disputed as to order and completeness of description of the door incident (because Letoto shoved the door once, Hall fully closed the door, then Letoto used the handle to unlatch the door and shoved a second time, after which Hall then attempted to shut the door, and Letoto stuck his foot in the doorway). | HALL-0156 (Dkt. 233-23/ Dkt. 244) at 0:20-1:36; HALL-0058 (**Ex. 2**) at 60; PCSOF¶12 |
| **6.** Disputed because cited evidence does not prove truth of matter asserted. Object because underlying medical records not disclosed in discovery (despite being subject of request). | |
| **7.** Admit Hall called 911 but dispute reason for call. | Hall 2nd Decl.¶¶16-20 |
| **12.** Disputed to extent this suggests Dispatch assigned Koanui to respond because "it's dispatch that assigns [officers] to respond to a particular | Castillo Dep. (**Ex. 3**) 52:7-53:10; PCSOF¶18 |

---

[2] Allegations are not evidence. *See Caniadido v. MortgageIT, LLC*, No. CIV. 11-00078 JMS, 2011 WL 3837265, at *8 (D. Haw. Aug. 26, 2011) ("Allegations in a Complaint. . . are irrelevant in determining summary judgment.").

1

| | |
|---|---|
| incident" and Dispatch did not ask/instruct him to respond. | |
| **13-17.** Disputed because Koanui spoke to Letoto about the details of the dispute with Hall before informing Dispatch he would respond. | PCSOF¶¶14,17,19 |
| **23.** Disputed to the extent this challenges the existence or extent of Hall's injury. An ER physician diagnosed Hall with a hip contusion. | PCSOF¶12 |
| **24.** Disputed to the extent this suggests Koanui did not threaten Hall with arrest because Koanui made such threats and openly confirmed to others at the Residence that he did so (in violation of HPD policy). | Koanui BWC 3:20-4:05, 4:30-4:55 ("So I wanna make sure that nobody's gonna get unnecessarily arrested for anything"), 37:45-38:00 (Koanui admitting he threatened Robin with arrest for extortion); Hall 2nd Decl.¶¶24-40; PCSOF¶39-40,52-57 |
| **25.** Disputed because Hall did not feel free to move. | PCSOF2¶¶75-81 |
| **26.** Disputed for same reasons as #24 and because, contextually, this was a veiled threat. | |
| **27.** Disputed. Hall reasonably believed she was being investigated for multiple crimes after Koanui accused her of having committed extortion (a felony) and theft. When Koanui asked to come inside shortly thereafter, Hall did not feel she could decline. When Koanui told her to sit on the couch, shortly after he sat down himself, Hall felt she could not decline. When speaking to Hall, Koanui used a threatening/intimidating tone such that Hall felt she had no choice but to answer Koanui's questions. | Hall 2nd Decl.¶¶24-40; Koanui BWC 0:00-5:45; PCSOF¶¶75-81 |
| **28.** Admitted that Hall was not prosecuted for a crime relating to the incident but denied that Koanui did not accuse her of committing a crime and threaten to arrest her for it. | PCSOF¶¶52-55; C00021 (Dkt. 233-12) at 21-32 |
| **30.** Disputed to the extent this suggests this was the beginning of Maioho's involvement. Koanui apprised Maioho of his conflict of interest *before* arriving at | PCSOF¶¶27-29 |

2

| | |
|---|---|
| the scene and Maioho instructed Castillo to be the "lead officer" because of Koanui's conflict of interest. | |
| **31.** Disputed because unclear what "evaluation" refers to. Also disputed to the extent this suggests Maioho gave Hall the opportunity to submit a statement that would have resulted in a report being filed against Letoto. Maioho only provided Hall with forms to make a statement in "rebuttal" to Letoto's theft complaint against her. Maioho never gave Hall the opportunity to file her assault third complaint against Letoto, even though Hall also gave her an oral statement providing all the elements of assault. | C000021 at 29; Hall 2nd Decl.¶¶47-54 |
| **32.** Disputed because it is unclear which statement "her written statement" refers to. Hall provided Koanui multiple statements alleging assault and UED, which was per HPD policy to require the filing of an incident report listing Hall as complainant. | Koanui BWC at 0:50-4:39; Castillo BWC (Dkt. 233-20/Dkt. 244) at 0:22-1:23; Maioho BWC2 (Dkt. 229-7/Dkt.238) at 2:35-5:07; Hall 2nd Decl.¶¶47-54; PCSOF¶¶43-48 |
| **33.** Disputed to the extent this suggests that Koanui filed a report that fully provided material elements of Hall's account to HPD and prosecutors. Hall clearly told Koanui that she wanted to "press charges" or pursue a criminal case against Letoto. Despite have more than enough information to file such a report under HPD policy, Koanui only filed a report listing Ms. Hall as a *suspect* and did not file a report listing her as the "complainant" and Letoto as the suspect for assault or UED. Koanui also did not disclose his conflict of interest in his report. | C000021-32; PCSOF¶¶43-49,51,64 |

### Plaintiff's Additional Concise Statement of Facts Supporting Opposition

| | |
|---|---|
| Plaintiff incorporates by reference facts **1-64** asserted in the concise statement supporting her motion for partial summary judgment against Koanui. | Dkt. 233 |
| Plaintiff incorporates by reference facts **92-137** asserted in her concise statement opposing the summary judgment motion filed by Castillo/Maioho. | [forthcoming] |

| | |
|---|---|
| **65.** Under HPD policy, witnesses can make statements orally (and need not submit a written statement). | Peters Dep. (**Ex. 4**) 87:10-88:14; PCSOF¶47 |
| **66.** "A complainant, in the sense of HPD's term,…[is] someone that would be filing a criminal complaint." | Peters Dep. (**Ex. 4**) 132:25-134:21 |
| **67.** HPD police reports are reviewed by "prosecutors," "record events for court purposes," and "document alleged crimes." | Peters Dep. (**Ex. 4**) 112:22-115:13 |
| **68.** Patrol officers forward all approved police reports to prosecutors, who have the duty to "decide if they're going to . . . move forward with the case or not." | Maioho Dep. (**Ex. 5**) 116:9-119:10 |
| **69.** At the time Letoto arrived at the residence, Hall was in authorized possession of the phone that Letoto had given to her after she started working for EO. | Hall Dep. (**Ex. 1**) 95:8-98:21; Letoto Dep. (**Ex. 6**) 33:25-34:16 |
| **70.** Hall told Koanui she was planning on returning the phone as part of her agreement with Letoto and that Letoto never asked her to immediately return the phone before she closed her door to go to the bank. | Hall 2nd Decl.¶¶14-16; Koanui BWC 41:29-42:55 |
| **71.** After Hall closed the door, Letoto opened it and slammed it into her, which led her to call 911. | Hall 2nd Decl.¶19-20; HALL-0156 at 0:20-1:36 |
| **72.** Soon after Koanui arrived, Hall returned the phone to Letoto through Ms. Griego. | Hall 2nd Decl.¶¶38-39; Koanui BWC 22:00-55 |
| **73.** Koanui characterized the dispute between Hall and Letoto as "a civil matter" and based on "a civil agreement." | Koanui BWC 4:28-5:22 ("a civil matter"), 7:00-7:35 ("civil agreement") |
| **74.** Maioho-Pohina arrived at the home about 55 minutes after Koanui and Castillo. | Koanui BWC 57:20 |
| **75.** Koanui, Castillo, and Maioho-Pohina arrived in marked patrol cars, were in full uniform, and were visibly carrying firearms and tasers. | Hall 2nd Decl.¶56; Koanui BWC 1:07:00-42; Castillo BWC 1:07:15-28 |
| **76.** When Koanui accused Hall of committing extortion, she feared she was being criminally investigated and could be arrested at any moment. | Hall 2nd Decl.¶¶24-40 |
| **77.** Koanui referred to Hall's conduct as "a B felony" at least twice. | Koanui BWC 3:20-4:10, 4:15-5:07 |
| **78.** Koanui adopted an authoritative physical stance and tone when talking to Hall. | Hall 2nd Decl.¶31 |
| **79.** None of the officers, including Koanui, ever told Hall she was free to leave, and Koanui never told her she had the right to not answer his questions. | Hall 2nd Decl.¶¶41,55 |

| | |
|---|---|
| **80.** When Koanui asked Hall to bring up the surveillance footage, Hall felt she had no choice but to comply, so she complied. | Koanui BWC 1:43-3:20; Hall 2nd Decl.¶¶28-29; |
| **81.** Koanui instructed Hall to "come sit down," a command to which Hall immediately felt no choice but to submit. | Koanui BWC 5:10-5:45; Hall 2nd Decl.¶¶30-34 |
| **82.** Per HPD policy, "the standard for what information needs to be provided to generate an initial [police] report is lower than the standard to . . . make a custodial arrest." | Peters Dep. (Dkt. 233-15) at 165:7-18 |
| **83.** When the officers were discussing what report to file for Letoto, Castillo asked Maioho-Pohina "no need [written] statements, just verbals?" to which Maioho-Pohina responded, "verbals is fine." | Castillo BWC 1:11:24-1:12:12; Koanui BWC 1:11:56-1:12:55 |
| **84.** After Castillo asked, "what case we making for him [Letoto]?" Koanui decided to file a report for "Theft Third" for Letoto. | Castillo BWC 1:11:24-1:12:12; Koanui BWC 1:11:56-1:12:55, 1:13:50-1:14:39 |
| **85.** Koanui relied on Letoto's oral estimate of the value of the phone to determine the relevant crime. | Koanui BWC 1:13:50-1:14:39 |
| **86.** The written witness statement Letoto provided about the incident was sent at 6:53pm from his EO email address to Koanui at his EO email address. | KOANUI00024 (**Ex. 7**) (email); KOANUI00040 (**Ex. 8**) (Letoto's HPD 252 statement) |
| **87.** Per HPD policy, an officer cannot refuse to consider the testimony, and take the statement, of a witness only because they are related to the victim | Peters Dep. (**Ex. 4**) 105:22-106:15 |
| **88.** Koanui was the senior officer on the scene. | Koanui Dep. (Dkt. 233-11) 146:18-147:4 |
| **89.** Koanui was aware of Policy 8.06 and was trained on it at the police academy. | Koanui Dep. 60:8-24; Peters Dep. (**Ex. 4**) 156:4-8 |
| **90.** In a private one-on-one conversation, Koanui conveyed to Letoto Hall's allegations about the breaking into the home and hip pain, then says "So we're gonna need to figure out what…" | Koanui BWC 00:13:15-13:30 |
| **91.** 10 seconds later, Koanui clarified out loud that his body-worn camera is "still on." | Koanui BWC 00:13:40-13:55 |