IN THE UNITED STATES DISTRICT COURT

STATE OF HAWAII

| | |
|---|---|
| ROBIN HALL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU; CHRISTOPHER KOANUI; LEONARD LETOTO; DEBRA MAIOHO-POHINA; JOHN LEO CASTILLO,<br><br>Defendants. | CASE NO.CV 21-00248 LEK-KJM |

ZOOM DEPOSITION OF ANDRE PETERS

Taken on behalf of the Plaintiff ROBIN HALL, in Honolulu, Hawaii 96813, commencing at 10:35 a.m., on Friday, November 8, 2024 pursuant to Notice.

BEFORE: MYRLA R. ROMERO, CSR No. 397

Notary Public, State of Hawaii

Exhibit 4

APPEARANCES VIA ZOOM:

For Plaintiff ROBIN HALL:

JONGWOOK "WOOKIE" KIM, ESQ.
ACLU OF HAWAII FOUNDATION
P.O. Box 3410
Honolulu, Hawaii 96801
wkim@acluhawaii.org

For Defendants CITY AND COUNTY OF HONOLULU, JOHN LEO CASTILLO and DEBRA MAIOHO-POHINA:

WILLIAM R.K. AWONG, ESQ.
Deputy Corporation Counsel
City and County of Honolulu
530 S. King Street, Room 110
Honolulu, Hawaii 96813
wawong@honolulu.gov

For Defendant CHRISTOPHER KOANUI:

ZACHARY K. SHIKADA, ESQ.
Kobayashi, Sugita & Goda
First Hawaiian Center, 26th Floor
999 Bishop Street
Honolulu, Hawaii 96813
zks@ksglaw.com

Also present: GEORGE CORDERO
AARON DVORKIN

# I N D E X


| EXAMINATION BY: | PAGE |
|---|---|
| MR. KIM...................................... | 4 |

| EXHIBITS MARKED FOR IDENTIFICATION | | PAGE |
|---|---|---|
| Exhibit 1 | Plaintiff's Notice of Rule 30(b)(6) Deposition of City and County of Honolulu by oral examination | 9 |
| Exhibit 2 | Honolulu Police Department policy auxiliary and technical services, Policy Number 8.06 | 39 |
| Exhibit 3 | Honolulu Police Department policy law enforcement operations, Policy Number 4.31 | 107 |

(Disclosure presented to all counsel.)

ANDRE PETERS,

called as a witness by and on behalf of the Plaintiff, having been first duly sworn to tell the truth, the whole truth and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. KIM:

Q Good morning. My name is Wookie Kim. I'm a lawyer representing Plaintiff Robin Hall in this lawsuit. Thank you for being here today.

Could you please begin by stating and spelling your full name for the record:

A It's Andre peters. First name, A-N-D-R-E; last name, P-E-T-E-R-S.

Q And you're represented by Mr. Awong today?

A Yes.

Q Have you had your deposition taken before?

A No.

Q So today is the first time that you are sitting for a deposition?

A No, for this -- for this case, yes, but I've been deposed before.

Q How many times have you been deposed before?

A Yes.

MR. AWONG: Objection. Compound.

BY MR. KIM:

Q I'm sorry, what did you say?

A Yes.

Q Okay. Thank you. If we could go off the record for one quick second, Myrla.

OFF THE RECORD.

BY MR. KIM:

Q I would like to turn even though we did touch on witness statements, I'm now turning to topic 4-C which is policies, procedures and training dot, dot, dot about taking witness statements, including statements from minors, form HPD 252 statement form, and then HPD 252-A statement continuation form. Do you recognize that description?

A Yes.

Q What specifically did you do to prepare to testify on the city's behalf about topic 4-C?

A 4-C basically reviewing the policy about statement forms.

Q And is that policy No. 4.31?

A Yes.

Q So under HPD policy, why does HPD take witness statements, you know, what's the purpose of

them?

A We're not talking about verbal statements. We're talking about written sometimes?

Q Well, that's a question I was going to ask you a little bit later but we might as well start with that. How does HPD define what a statement is?

A I'm not too sure HPD defines what a statement is, but it's a recording of what occurred. I'm not too sure if there's an actual definition that HPD has for it.

Q And as far as making a statement, statements can be made both orally and in writing, correct?

A Correct.

Q So with that understanding that statements can be made both orally and in writing, what is the purpose behind HPD taking witness statements?

MR. AWONG: Objection. Vague and ambiguous. It's an incomplete hypothetical. Calls for speculation.

THE WITNESS: Are we talking about written statements or statements in general?

BY MR. KIM:

Q Statements in general although are you saying that there's a difference?

situations are very fluid and volatile. So it all depends.

BY MR. KIM:

Q So let me look at this or let me ask this question from a different angle. So is it your testimony that if there's a family relationship that by itself allows an officer to not take the statement from that witness?

MR. AWONG: Objection. It's an incomplete hypothetical. Calls for speculation.

MR. SHIKADA: Join.

THE WITNESS: I'm not saying that. I said it depends.

BY MR. KIM:

Q So what are some of the factors that it depends on?

A I couldn't answer that. It just all depends on the family situation, the relationship, the culture of the family, where the family lives, their past. I couldn't even start to be giving you a scenario or factors for that scenario.

Q Okay. So I think what you're responding to it's suggesting that there was prior -- the officers had prior knowledge about sort of the family history and the family culture. But assume the officer has

never interacted with this family before and in that scenario, they arrive on scene, and there's a relative of the victim who wants to provide a statement about what happened, are they disqualified from providing that written statement?

MR. AWONG: Objection. Calls for speculation. Incomplete hypothetical.

MR. SHIKADA: Join.

THE WITNESS: There has to be some other circumstances involved. Just because they are a family member does not exclude them from being able to provide a statement. And when I say past, I'm not talking about the relationship or past relationships between this particular family and the officers. I'm talking about the past of the family themselves.

BY MR. KIM:

Q Understood.

I think it's been over an hour, and I'm also at a good stopping point before the next line of questioning so why don't we take a lunch break now. Off the record.

(Lunch from 1:25 p.m. to 2:02 p.m.)

MR. KIM: Let's go back on the record then at 2:02. George, if you could put policy No. 4.31 up on the screen, please. This will be

not required to have an interviewee reduce their statement into a written form?

A No.

Q No meaning correct, they're not required to?

A Yes.

Q Okay. How often are HPD officers trained, if at all, on policy 4.31?

A They are given the initial training at the training academy and every district has in-service trainings that are done at lineups and it covers a wide variety of topics.

Q And just to clarify, lineups meaning at the beginning of each shift?

A Yes, which is daily.

Q Right. Now, are those trainings occurring each day at every single lineup or does it sort of depend if there's something to train on on a given day?

A It depends on the individual watch commander for each district and for each shift.

Q Understood. I'm now moving on to topic 4-D which is about policies, procedures and training dot, dot, dot filing incident reports including when there are cross complaints including form HPD 192 and form

HPD 172. Does that topic sound familiar to you?

A Yes.

Q What did you do to prepare to testify on the city's behalf about topic 4-D?

A Oh, reviewing policies, procedures, and any training material that was provided to our officers?

Q And for purposes of this topic, what policies and procedures are relevant?

A I can't say recite the actual policy itself, but the 192 as stated in the policies I think it's under police reports.

Q Right. And that's -- I think we had already looked at it very briefly which was the Exhibit 1 policy No. 8.06. Do you recall that?

A Yes.

Q Are there any other policies or procedures that are relevant to topic 4-D?

MR. AWONG: Objection. Vague and ambiguous.

THE WITNESS: I can't recall offhand.

BY MR. KIM:

Q Okay. So, George, feel free to take the exhibit down and we'll just talk generally first. What is an incident report?

A An incident report is the form 192 is where

the officer would document all necessary information. The face page which is the 192 is where mostly the basic information for complainant, victim, witness or suspect is written or I'm sorry, typed, I guess, on the computer.

And the subsequent page of 182-A is the actual continuation where the body of the report or the facts and circumstances to that particular case is recorded.

Q And what is the purpose of an incident report?

A It's for, not all cases, but the incident report is, you know, obviously to record events for court purposes and for the officer to recall the information for that particular case months or years down the road which needed to be recalled.

Q Are there any other purposes for incident reports?

A Yes. Can you be a little more specific as far as -- I mean, I'm not sure how to answer that question.

Q I think you said to record the event and then for court purposes recalling information for a particular case. Are there any other functions or purposes of an incident report?

A It's for both prosecutors and defense attorneys. In some other cases it could be used for victim, witness, counselors, advocates, domestic violent advocates. So there could be wide uses for the incident report.

Q And one of the purposes could be to document alleged crimes, right?

A Well, yeah, that's basically the main reason for the incident report, yes.

Q That's sort of what I was trying to get at. Who is responsible for creating incident reports?

A It would usually be the officer that's at the scene of a particular incident.

Q If there are multiple officers, who is responsible in that situation for creating an incident report?

MR. AWONG: Objection. Calls for speculation. Incomplete hypothetical.

THE WITNESS: It would depend on the officers at the scene.

BY MR. KIM:

Q We'll talk about the details in a little bit, but before I get there, what portion of an incident report is automatically generated, if at all?

the officers will need to ask certain questions in order to obtain the elements for a particular offense. So yeah, it is a fine line that, you know, it will be in the best judgment of the officer to determine, you know, when to stop and read that person their rights, their Miranda rights.

Q Okay. George, let's put back up Exhibit 1 which is the police reports policy.

So this is Exhibit 1. We've pulled this up a couple times. Do you see in the definition case report number?

A Yes.

Q What is the purpose of the case report number?

A It's just to categorize that report so it's found quickly.

Q And then definition C says CADS. What is the CADS?

A The Computer Aided Dispatch System.

Q How is the CADS different from the CRS?

A The CAD System is what the dispatchers use. It's a computer-aided dispatch system and the CRS is basically the report writing system that we use to generate reports.

Q George, if you could turn to page 2. We're

going to look at specifically and maybe zoom out just a little bit. Perfect.

So this is page 2, if you could scroll up to where it says the header. We're going to look at 2-A, initiation of police reports. And then the subsection is occurrences observed by or reported to on-duty officers. Could you read the first paragraph out loud?

A An on-duty officer shall prepare a numbered report each time he or she receives a complaint or observes a violation of law, motor vehicle collision, or unusual occurrence.

Q So under this policy, an on-duty officer must prepare a numbered report each time he or she received a complaint, right?

A Yes. According to the policy, yes.

Q So how is complaint defined under this HPD policy?

A A complaint could be anything, loud neighbors, a fire call, someone fell off a bike, someone fell on a tree. It's basically any wide range of complaints that can come through the dispatch system.

Q So it's interpreted pretty broadly?

A Yes. So I guess anybody that calls 911,

that request for police is categorized as a complaint.

Q And to followup on that a 911 caller is making a -- that's automatically categorized as a complaint. So in that situation, is the 911 caller automatically a complainant?

A No.

Q No. Can you explain why?

A Like I said, a complaint could be a tire in the roadway, the streetlights are out. A complainant, in the sense of HPD's term, would be that someone that would be filing a criminal complaint.

Q I see, I see, okay. So a complainant is someone who wants to file a criminal complaint and that's different from a complaint which is someone asking for police assistance?

A Yes. But it's not -- we wouldn't be able to determine whether a person is going to be a complainant or not until the officer gets there to investigate the incident.

Q Okay. And so how does an officer determine whether a 911 caller wants to be a complainant?

MR. AWONG: Objection. Incomplete hypothetical. Calls for speculation.

report has been filled out as completely and accurately as possible at that time, correct?

A Yes.

Q How often are officers trained on policy 8.06?

A They're initially trained at the police academy and again in-service can be done in their particular districts and/or shifts.

Q And does the same go for someone who's a supervising sergeant?

A Yes, so it will be -- so a watch will consist of a lieutenant, x-amount of sergeants and x-amount of officers.

Q Let turn to page 10, George. We're focusing on Roman numeral VI. This is Roman numeral 6-A is about the HPD 192 form, correct?

A Yes.

Q I'm trying to square your testimony earlier about sort of the -- let me find the actual number.

Do you remember earlier we were talking about Subsection 2-A which was occurrences observed by and reported to on-duty officers and the specific language was an on-duty officer shall prepare a numbered report each time he or she receives a complaint dot, dot, dot. Do you remember?