**Assignment/Arrival:** I, Leonard Y. Letoto, am the Co-Founder of Exceptional Obedience, LLC. On June 10, 2019, at approximately 1017 hours, I was doing routine training with various client dogs at my residence when I received a text message from my Administrative Assistant, Robin HALL. HALL had been our company's Administrative Assistant since April 25, 2019.

**Synopsis:** Via text message, HALL inquired about her latest paycheck (see attached screenshot of the text message thread.) She had not been paid because there was an issue that needed to be addressed first with regards to her hours worked. I called HALL on the phone and spoke with her briefly. HALL was initially worried that she was not going to be paid properly. I assured her that I fully intended to pay her what she was owed but needed to determine the exact amount. Additionally, during that conversation, HALL and I agreed that her performance was not up to company standards and she resigned her position effective immediately. I offered to pay her via PayPal but she declined, stating that she "couldn't accept money through PayPal" (despite the fact that she had been paid that way before.) She requested cash but I decided to pay her by company check (for documentation purposes) and wrote out a check to HALL for $816.00. HALL ended our phone conversation by telling me that she would contact me later to arrange a time to meet up so I could give her her final paycheck and she could return the company cellular phone (a Samsung Galaxy S9.) At 1407 hours, HALL texted me, "*I can meet you this afternoon in Kapolei. What's a good time?*" I replied, "*My appt in Ewa Beach ends around 3pm so after that.*" At approximately 1440 hours, HALL replied, "*Ok, I'll be at 98-1234 Umena about 330.*" At 1527 hours, I texted HALL to let her know I was approximately 10 minutes away from her residence. Upon my arrival, I approached the front door of her home and rang the doorbell. HALL answered the door and I presented her with the aforementioned check for $816.00. HALL immediately stated that she wanted cash. I informed HALL that I needed to pay her via check for documentation purposes. HALL protested and I told her, "*This is the way you're getting paid from me, take it or leave it.*" HALL took possession of the check, turned around and began to shut the door. As she shut the door, HALL stated, "*Fine, you'll get your phone when I get my money.*" I took this statement to mean that HALL did not intend to return the company cellular phone as promised and as she was legally obligated to do since she was now no longer in my employ. I immediately placed my foot in the doorway to prevent the door from closing. HALL tried to close the door but my foot prevented the door from closing completely. I stated to HALL, "Give me my phone, please." HALL responded by screaming. I stood in place and repeated my request for my phone. At no time did I attempt to enter the residence, my intent was to keep the door from closing completely and retrieve my phone. At no time did I make physical contact with HALL. At this time, I heard HALL instruct someone else in the residence to call the police and I stated I was just fine with the police being called because I wanted my phone back. I subsequently moved my foot, let her shut the door and returned to my vehicle parked on the street fronting her residence to wait for the police to arrive. Before the police arrived, the owner of the home, later identified as "Mike," and a female, later identified as "Iris," (Mike stated that Iris was a Realtor) arrived at the residence and entered through the front door

**HPD Arrival:** At approximately 1600 hours, Officers C. KOANUI and J. CASTILLO arrived on scene and entered the residence to speak to HALL. . At approximately 1700 hours, Iris emerged from the residence and handed me the aforementioned cellular phone. Iris stated that she had retrieved the phone from HALL.

**Disposition:** At approximately 1730, I was told by KOANUI that I was free to leave the scene.

_____   _____
Leonard Y. Letoto                          Date/Time

# Exhibit 8